## IN RE TRUSTEESHIP UNDER WILL OF RALPH WHELAN.
## FIRST NATIONAL BANK OF MINNEAPOLIS v.
## BELLE STEWART AND OTHERS.
## MINNEAPOLIS SOCIETY OF FINE ARTS, RESPONDENT.

116 N. W. (2d) 811.

September 7, 1962—No. 38,502.

*John J. Doherty,* for appellants.

*Best, Flanagan, Lewis, Simonet & Bellows* and *Robert L. Crosby,* for respondent.

MURPHY, JUSTICE.

We held in In re Trusteeship under Agreement with Mayo, 259 Minn. 91, 105 N. W. (2d) 900, which dealt with the administration of two inter vivos trusts, that changed economic conditions might permit deviation from investment provisions which forbade investment in corporate common stock. In the case before us we are asked to go a step further and hold that unforeseen economic conditions may authorize courts to vary the beneficial rights contained in a trust instrument.

It appears from the record that the trustor, Ralph Whelan, a suc-

cessful Minneapolis lawyer, died in 1942, and pursuant to the terms of his last will, the trust with which we are here concerned was established. The trust provided for annual annuities payable quarterly in specific amounts to several life beneficiaries therein named. Three of them are still living and are the appellants here. One surviving life beneficiary is Mrs. Belle Stewart, a niece of the trustor, who receives an annuity of $3,500 per annum. The other two are Miss Louise M. Carlin and Miss Grace A. Green, employees of the trustor at the time of his death and for many years prior thereto. By the terms of the trust Miss Carlin and Miss Green have been receiving $2,500 per annum and $1,800 per annum, respectively. It appears that those sums represent the amount of salaries paid to them at the time the trustor's will was made. The instrument further provides that upon the death of the last surviving life beneficiary and 15 years thereafter the Minneapolis Society of Fine Arts is to receive the corpus of the trust with the then accumulated income.

This matter arose by a petition of the trustee to the district court asking for an order authorizing it to deviate from the investment terms of the trust. In the same proceeding the appellants herein petitioned the court to deviate from the provisions of the instrument by increasing their annuities to an amount twice that provided in the will. The trial court under authority of the Mayo case granted the trustee's petition to deviate from the investment terms of the trust. It denied the petition of the beneficiaries. The only issue before us is the correctness of the order of the trial court denying deviation as to the beneficial rights of the life beneficiaries.

The appellants' counsel argues that, since this court has recognized that where because of economic inflation deviation may be permitted in an investment provision of the trust which will have the effect of preserving the value of the corpus, there is no reason why the court should not also permit a deviation from the provisions of the will which determine the beneficial interests of the parties. He ably argues for an interpretation of our authorities to the effect that necessity requires a change in the beneficial provisions to accomplish the intention of the donor and concludes "necessity requires in this case a change in

the specific sums due these appellants under the terms of this Trust to preserve their relative interests as beneficiaries of this Trust in accordance with the effect of the Order of the court authorizing deviation from investment provisions of the Trust." He argues that the beneficiaries should be permitted to "retain their same relative positions that they were in at the outset in accordance with the original intents and purposes of the trust instrument."

In considering the merits of appellants' argument it is necessary to keep in mind certain clear and definite provisions of the will upon which our decision must necessarily turn.[1] The will provides (1) that

---

[1]The will provides:

"*Item Eleven.* * * *

          *     *     *     *     *

"The uses and purposes for which this Trust or these Trusts are created by this clause of my Will are:

"* * * to distribute and pay, every three months, out of the net income from said Trust Property as it accrues:

          *     *     *     *     *

"(b)   To my said niece, Mrs. Belle Stewart of No. 250 Holley Street, Brockport, Monroe County, New York, the sum of Eight Hundred Seventy-five Dollars ($875.00) quarterly, or Thirty-five Hundred Dollars ($3500.00) per year, during the remainder of her natural life; after her death, such portion of said net income to fall back into and become a part of the *corpus* of said Trust Estate until the termination of said Trust;

"(c)   To said Miss Louise M. Carlin, of No. 2435 First Avenue South, Minneapolis, Minnesota, the sum of Six Hundred Twenty-five Dollars ($625.00) quarterly, or Twenty-five Hundred Dollars ($2500.00) per year, during the remainder of her natural life, for her own use and benefit, separate and apart from any husband she may wed, and free from his debts, control or interference, and not subject to any previous disposition or encumbrance thereof by way of anticipation; after her death, such portion of said net income to fall back into and become a part of the *corpus* of said Trust Estate until the termination of said Trust; this bequest is made to Miss Carlin in recognition of her more than thirty years of faithful service as clerk and assistant in my law office;

"(d)   To said Miss Grace A. Green, of No. 2154 Dayton Avenue, St. Paul, Minnesota, the sum of Four Hundred Fifty Dollars ($450.00) quarterly, or Eighteen Hundred Dollars ($1800.00) per year, during the remainder of her natural life, for her own use and benefit, separate and

when each annuitant dies the amount she was receiving thereafter falls back into the corpus instead of being given to the surviving annuitants; (2) that the excess income shall be accumulated and added to the corpus; and (3) should the net income be insufficient to cover the annuities, they shall abate proportionately. It must follow from the clear provisions of the will that the testator intended that the accumulations of income after payment of annuities be added to and become a part of the corpus for the benefit of the remainderman and

---

apart from any husband she may wed and free from his debts, control or interference, and not subject to any previous disposition or encumbrance thereof by way of anticipation; after her death, such portion of said net income to fall back into and become a part of the *corpus* of said Trust Estate until the termination of said Trust; this bequest is made to Miss Green in recognition of her more than twenty years of faithful service as clerk and assistant in my law office;

\* \* \* \* \*

"*Item Twelve*. After payment and distribution of the said several portions of the net income of the above-described property so bequeathed to and held in trust by said First National Bank and Trust Company of Minneapolis, to the several persons above-named, beneficiaries of said Trust, the balance of said net income shall fall back into and become a part of said Trust Estate and shall be kept invested and reinvested by the said Trustee, in the manner herein provided, during the remainder of the life of said Trust.

"*Item Thirteen*. In case for any reason the net profits or income arising from the property and estate in the hands of said First National Bank and Trust Company of Minneapolis, Trustee, shall not be sufficient to pay in full, in any year or years, the sums of money named to the beneficiaries named in the several testamentary trusts provided for in paragraphs '(a)' to '(f)', inclusive, of Item Eleven hereof, then I request that reduction in payments be made proportionately as near as may be, so that such loss of net profits and income may be borne in equal proportions by all said beneficiaries as near as may be.

"*Item Fourteen*. Upon the termination of this Trust, the *corpus* of all said property and estate belonging to said Trust and the remainder thereof, real, personal and mixed, and of the net income thereof, shall be conveyed, assigned, transferred, paid and delivered to, and vest absolutely and forever in, The Minneapolis Society of Fine Arts (Inc.), No. 201 East Twenty-fourth Street, Minneapolis, Minnesota."

that any increase in annuities which the court might allow must be paid from funds which the testator intended to be a part of the corpus of the trust. The fatal weakness of appellants' position is that they ask the court to take property from the remainderman and give it to the life beneficiaries.

We find no authority in this state and little elsewhere to support the position that the court may in the exercise of its equity power increase interests of the parties to the detriment of the remainderman. We think the issue in this case is controlled by our decision in In re Trust under Will of Cosgrave, 225 Minn. 443, 31 N. W. (2d) 20, 1 A. L. R. (2d) 175. While the facts in that case are not foursquare with those in the case before us, the applicable principles of law are correctly stated therein. In the Cosgrave case the testator had directed that the residue of his estate be placed in trust, one-third of the income to be paid to the widow and two-thirds to his daughters.[2] At the widow's death the residue was to go to the daughters. It also provided that if needed all of the income should be directed to the widow's benefit. This soon became necessary and all of the income was paid to her for her benefit. Because of illness the widow's financial needs exceeded the income of the trust and she requested additional payments out of the corpus. In denying this relief we noted that the cardinal rule in the construction of a will is that the testator's intention is to be gathered from the language of the will itself. After ascertaining that it was the testator's intention that the corpus should pass intact to the daughters at his wife's death, we went on to say (225 Minn. 465, 31 N. W. [2d] 33):

"It being impossible to interpret the will as authorizing the trustees to encroach upon the corpus for the widow's support, the question remains whether the court can confer upon them the power to do so. In support of the affirmative it is argued that where a trustee lacks power to do an act either because the trust instrument did not grant it or because it even forbade it the court may grant the power, and, as it said, authorize the trustee to 'deviate' from the terms of the trust.

[2] In the Cosgrave case the term "proceeds" as used in the will was interpreted as being synonymous with the word "income."

As applied here, the court would confer power upon the trustees to take the corpus from the daughters as the remaindermen to provide for the widow as one of the beneficiaries of the income of the trust during her life. The consequences of the application of the rule strongly suggest that it is nonexistent. The daughters took vested remainders of the corpus at testator's death. First & Am. Nat. Bank v. Higgins, 208 Minn. 295, 293 N. W. 585. The court lacks power to take property from one person and give it to another."

The authorities relied upon by the appellants[3] may be distinguished from the case before us. In the cases where the courts permitted deviation from the beneficial provisions of the will, they were permitted by a fair interpretation of the instruments to find an intention on the part of the testator to permit it. As an example, in Petition of Wolcott, 95 N. H. 23, 26, 56 A. (2d) 641, 643, 1 A. L. R.(2d) 1323, 1326, the widow of the decedent was to receive the income of a trust for life. Upon her death principal and accumulated income was to go to decedent's issue. Changed conditions made it difficult for the widow to get along with only the income, and her two sons joined the trustee in asking for authority to invade the principal to meet her reasonable needs. The court there concluded that the purpose of the testator could be found within the will "to provide the widow with a liberal income, unrestricted by technical rules." The court accordingly permitted invasion of the principal and an increase of the widow's annual allowance. On the contrary, we find nothing in the instrument before us which would indicate an intent on the part of the testator to change the terms of his will because of unforeseen circumstances. It may be conceded that the annuities which the beneficiaries receive today are, because of inflation, substantially less in value than they were at the time of the trustor's death. But it is equally clear that there is

---

[3]Petition of Wolcott, 95 N. H. 23, 56 A. (2d) 641, 1 A. L. R. (2d) 1323; Rogers v. English, 130 Conn. 332, 33 A. (2d) 540, 147 A. L. R. 812; National Newark & Essex Banking Co. v. Osborne, 19 N. J. Super. 175, 88 A. (2d) 229. See, also, Donnelly v. National Bank of Washington, 27 Wash. (2d) 622, 179 P. (2d) 333; In re Estate of Brown, 22 Misc. (2d) 277, 198 N. Y. S. (2d) 888.

nowhere expressed in the instrument an intention on the part of the trustor that the beneficiaries should have an income of constant relative value or that they should be maintained according to a certain living standard during their lifetimes. It simply provides the amount the testator intended them to have and clearly directs that the Minneapolis Society of Fine Arts is to have the remainder. The trial court's memorandum and order sets forth a clear analysis of the issue in the following statement:

"If there were no provision for these beneficiaries in the Will, they would receive nothing. If there were no provision in the Will covering investments, the law covering rights and duties of trustees as well as the authority vesting in the courts would take care of this administrative aspect. It is not the function of courts or trustees to rewrite dispositive provisions of Wills. A ruling directing an increase in the amounts of annuities as set forth in the language of the Will in the instant case would unduly burden both trustees and the courts in their treatment of other trust estates and would be conducive to disparities and favoritism in the handling of them. In fairness to beneficiaries generally, moreover, one might inquire at this point as to what the power of trustees and courts ought to be should a substantial deflationary period occur and the buying power of the dollar be increased substantially instead."

We are satisfied that the trustor did not intend the annuitants and remainderman to maintain a constant relative interest in the trust. Accordingly, the order of the trial court must be affirmed.

Affirmed.