# SUSAN P. BARRETT v. ALICE P. MACDONALD AND OTHERS.

121 N. W. (2d) 165.

February 21, 1963—No. 38,250.

*John D. Jenswold, Reavill, Jenswold, Neimeyer & Johnson, Samuel S. Gill,* and *Thelen, Marrin, Johnson & Bridges,* for appellant.

*Edwin A. Martini* and *Martini, Perkins, Harper & Gustafson,* for respondent Macdonald.

*Herbert M. Burns* and *Wheeler, Burns & Buchanan,* for respondent administrator c. t. a.

*John G. Cedergren,* for respondent executor.

## UPON REARGUMENT

OTIS, JUSTICE.

Appellant, Susan P. Barrett, seeks review of a judgment allowing an amendment to a final decree of distribution entered in the probate court of St. Louis County whereby the sale of 1,594 shares of stock was treated by the administrator as an advance to appellant who was one of the residuary legatees.

The principal issues for determination are: (1) Whether the probate court's failure to give effect to a stipulation in entering its final decree of distribution was a clerical error or a judicial error, and (2) whether 1,594 shares of stock sold by the administrator to pay a claim against the estate, the amount of which a residuary legatee by stipulation agreed to have deducted from her share of the estate, constituted an advance to be deducted in kind from her one-half interest in the stock remaining for distribution.

The decedent, Clara E. Pastoret, died testate on May 28, 1956, leaving an estate which consisted principally of 6,662 shares of common stock in Minnesota Mining and Manufacturing Company, valued at the time of her death at an amount in excess of $878,500. By the terms of her will, dated July 31, 1950, she bequeathed the residue of her estate "share and share alike" to her daughters, Susan P. Barrett, the appellant, and Alice P. Macdonald, one of the respondents.

It appears without dispute that in November 1954 Mrs. Barrett's husband received from Mrs. Pastoret a loan of $100,000, unsecured and not evidenced by any writing. The money paid to Mr. Barrett was borrowed by Mrs. Pastoret from the predecessor of Northern City National Bank of Duluth and was secured by 2,000 shares

of common stock in Minnesota Mining and Manufacturing Company. The note was renewed in November 1955. Interest was paid to the bank by Mr. Barrett. While Mrs. Macdonald asserts that the court can give no effect to the contention that the loan was not made to Mrs. Barrett but was made to her husband, because that issue was not raised in the appeal from probate court to district court, we need not determine that question since our decision rests on other grounds.

A dispute having arisen over the selection of a representative, the court appointed the predecessor of Northern City National Bank of Duluth as administrator c. t. a. and James B. Enochs as executor. In the due course of administration the bank's claim against the estate for the $100,000 borrowed by Mrs. Pastoret was filed in the probate court. Objection to the claim was made by the executor on the ground that it was not a charge against Mrs. Pastoret but against Mrs. Barrett. To resolve this dispute, the following stipulation was enterd into by Mrs. Barrett, Mr. Enochs, and the bank, on November 14, 1956:

"WHEREAS, The City National Bank of Duluth has heretofore filed its claim in the above entitled estate, stating that the above named decedent, Clara E. Pastoret, was indebted to it in the amount of $100,000.00 as evidenced by Promissory Note in such amount, dated November 9, 1955, due six (6) months after date, bearing five percent (5%) interest, signed by said decedent, and for which 2,000 shares of Minnesota Mining and Manufacturing Company common stock was pledged as collateral security thereto; and

"WHEREAS, an objection has been filed to the allowance of such claim; and

"WHEREAS, the undersigned, Susan P. Barrett, daughter of said decedent, has at all times acknowledged that she is liable for the full amount of such claim, to-wit: the sum of $100,000.00 plus interest to date of payment; has never disputed such fact; and now wishes further to confirm her liability.

"Now, THEREFORE, it is hereby stipulated by and between the undersigned, Susan P. Barrett, and the undersigned representatives of the estate of the above named decedent that:

"1.   Said claim of The City National Bank of Duluth, in the

amount of $100,000.00 plus interest to date of payment, is a valid claim against the estate of said decedent and is to be allowed in full by the above named Court; and

"2.  Said Susan P. Barrett is indebted to said estate in an amount equal to the allowed and paid claim of said bank, to the end that if said claim be allowed and paid, there shall be deducted from the share of said Susan P. Barrett as an heir of said decedent an amount equal to the claim as so allowed and paid."

Thereafter, on December 13, 1956, Mrs. Barrett's attorney wrote counsel for the bank asking that the claim be paid to stop the running of interest. Meanwhile, the representatives had begun the liquidation of 5,800 shares of Minnesota Mining stock at approximately inventory value in anticipation of paying taxes, expenses of administration, and the $100,000 note. It is undisputed that the correct amount of the claim with accumulated interest was $103,111.10. The stock having been split 2-for-1 in June 1956, a total of 13,324 shares were thereafter available to the estate. On December 30, 1957, the final account in Mrs. Pastoret's estate was heard and a decree of distribution entered. The decree included both the claim acknowledged by Mrs. Barrett in the sum of $103,111.10 and the remaining 7,524 shares of Minnesota Mining, and ordered the residue assigned to Mrs. Barrett and Mrs. Macdonald in equal shares. In April 1958 the probate court's attention was called to the fact that the decree failed to give effect to Mrs. Barrett's stipulation, in that the claim of $103,000 was not deducted from her share of the estate. No steps were taken to amend the decree until December 1958, when, in a petition to the probate court, Mrs. Macdonald asserted that she was entitled to 4,544 shares of Minnesota Mining and Mrs. Barrett 2,980 shares, and that the difference be treated as an advance to Mrs. Barrett by the representatives. The probate court amended the decree in the manner requested by Mrs. Macdonald and assigned to Mrs. Barrett the estate's claim against her for $103,000. From that decree Mrs. Barrett appealed to the district court which in effect affirmed the probate court, but assigned 4,559 shares to Mrs. Macdonald and 2,965 shares to Mrs. Barrett.

The question of whether or not 1,594 shares of Minnesota Mining (equivalent in value to $103,000 in December 1956) should be treated as an advance has now become a matter of substantial concern by virtue of the greatly enhanced value of that stock, which after an additional 3-for-1 split is now worth over $285,000.

1. It is undisputed that the first decree of distribution, dated December 30, 1957, completely overlooked and ignored the stipulation between Mrs. Barrett and the representatives of the estate. Whereas the stipulation agreed that the amount of the bank's claim would be deducted from Mrs. Barrett's share of the estate, the decree in effect merely assigned to Mrs. Macdonald half of the estate's claim against Mrs. Barrett, leaving Mrs. Macdonald to whatever remedies she had for collecting from Mrs. Barrett her half of the $103,000.

The first question for determination is whether the decree was a judicial error which the probate court lost jurisdiction to correct after the 6-month period in which to appeal expired (Minn. St. 525.712), or whether it was a clerical error, or misprision, governed by § 525.02(4).

There was testimony in the district court that the clerk having responsibility for auditing final accounts attached a memorandum to the file containing the following notation:

"Stipulation in kind to be filed so property can be properly decreed because of claim (which has to be decreed to Susan)."

The clerk who actually prepared the decree testified that she inadvertently overlooked the memorandum as well as the stipulation and drafted the decree without reference to either instrument. Although the record shows that at the hearing on the final account the probate judge inquired about a stipulation in kind to give effect to the assignment to Mrs. Barrett of the bank's claim, he testified that he had no recollection of actually reading the decree before he signed it, and stated that under ordinary circumstances he would have no occasion to do so. He expressed doubts that he either read it or directed the manner in which it should be prepared. He frankly stated that he relied on "two very competent employees" who were experts in performing their particular duties, and he had no independent knowledge of what distribution had been specified when he signed the decree.

The statute confers on the probate court the common-law power to correct clerical mistakes. Section 525.02 provides in part:

"In addition to its general powers, the probate court shall have power:

\* \* \* \* \*

"(4) To correct, modify, or amend its records to conform to the facts, and to correct its final decrees so as to include therein property omitted from the same or from administration."

A number of cases in Minnesota have called attention to the fact that probate courts enjoy the same right as district courts to invoke the doctrine embodied in Rules 60.01 and 60.02, Rules of Civil Procedure, which have superseded Minn. St. 544.32.[1] It is the rule in Minnesota that if a probate decree is deliberately entered as the result of a judicial construction of a will with no fraud and no mistake other than an erroneous construction of law, the power of the court to amend such decree is exhausted upon the expiration of the time to appeal therefrom.[2] However, the cases finding that decrees may not be amended, because the errors alleged are judicial in nature, are difficult to reconcile with those decisions finding amendments to be proper because they are occasioned by clerical mistakes.

In Robinson v. Thomson, 137 Minn. 446, 163 N. W. 786, an attempt was made to show that a decree should be set aside after the time to appeal had elapsed because it failed to conform to the will. Our court stated (137 Minn. 448, 163 N. W. 787):

"\* \* \* The appellants sought to show, at the trial, that the decree was prepared by a deputy clerk in the probate office, and was signed by the probate judge without having the will before him, and without considering or determining for himself whether the decree gave proper effect to the provisions of the will. The evidence presented goes no

---

[1]In re Estate of Henry, 207 Minn. 609, 613, 292 N. W. 249, 251; In re Estate of Daniel, 208 Minn. 420, 432, 294 N. W. 465, 471; In re Estate of Gooch, 212 Minn. 272, 274, 3 N. W. (2d) 494, 495; In re Estate of Simon, 187 Minn. 399, 409, 246 N. W. 31, 35.

[2]Savela v. Erickson, 138 Minn. 93, 98, 163 N. W. 1029, 1031.

further than to show that it is possible, though not probable, that such was the fact, and is clearly insufficient to overcome the presumption that the decree expresses the deliberate judgment of the court."

In affirming the lower court's decision that the decree should not be set aside after the time for appeal has expired, we held (137 Minn. 450, 163 N. W. 788):

"Doubtless the terms of a decree, distributing property pursuant to a will, may be so glaringly at variance with the plain provisions of the will that a court of equity can say that such provisions must have been overlooked; but the provisions in question are neither so plain, nor the variance therefrom in the decree so unexplainable, as to warrant us in saying that an inspection of the two instruments demonstrates that the provisions of the will could not have been in the mind of the court when it made its decree."

In a later decision a belated attempt was made to amend a decree by surcharging a representative for misappropriation. We held that the oversight or inadvertence, if any, was not that of the court but of the parties and that the time to amend the account had lapsed.[3]

The decision on which respondents particularly rely is In re Estate of Turner, 181 Minn. 528, 233 N. W. 305. In that case a will provided that the testator's homestead be assigned in trust, whereas the decree vested it in the widow in fee. The petition to amend the decree alleged neither fraud nor clerical error, we held. There was no allegation that the probate court was ignorant of the contents of the will or of the final decree, or that the decree was signed under the belief that it was not the document that it purported to be. Under these circumstances we held that petitioners had failed to sustain their burden of proof, stating (181 Minn. 532, 233 N. W. 306):

"* * * Such decrees should not be disturbed upon the mere say so of the probate judge, years after made, that the intended construction of the will was not expressed or that the will was forgotten because there had been a previous order made without proper consideration and hence erroneous."

---

[3]In re Estate of Simon, 187 Minn. 399, 246 N. W. 31.

It should be noted that in the Turner case 3 years had elapsed from the time the decree was entered until the proceedings to amend were commenced, during which time the rights of third persons had apparently intervened.

More numerous are the decisions finding errors to be clerical and hence grounds for amending decrees and judgments after the time to appeal has expired.[4]

That agreements between heirs with respect to a division of the estate will be given effect and not nullified by a decree of distribution was noted in In re Estate of Butler, 205 Minn. 60, 64, 284 N. W. 889, 891. More recently we found a clerical rather than judicial error in In re Estate of Gooch, 212 Minn. 272, 3 N. W. (2d) 494. There, although the testator left the homestead to one child with the expressed wish that the surviving spouse be permitted to use it for life as his home, the decree distributed the property to him for life with the remainder to all of the children. After a lapse of 10 months, a petition to amend the decree was presented to the probate court. The trial court found the decree resulted from the inadvertent error of a scrivener in the probate court. We held that since the decree was signed by the judge in the belief that the property was being assigned in accordance with the language of the will, it was the result of a clerical mistake by one not acting in a judicial capacity, and we affirmed.

In the case at bar the trial court's findings and memorandum hold that the original decree of distribution was not the considered judicial decision of the probate judge. The court found that there had been a clerical oversight and that the decree resulted through mistake, inadvertence, and the excusable neglect of the scrivener and the court. We agree. We have before us uncontroverted testimony that at the time of the hearing on the final account the judge had in mind the necessity for a stipulation. His clerk frankly acknowledged that the

---

[4]McClure v. Bruck, 43 Minn. 305, 45 N. W. 438; Chase v. Whitten, 62 Minn. 498, 65 N. W. 84; Wright v. Krabbenhoft, 104 Minn. 460, 116 N. W. 940; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; First Trust & Sav. Bank v. United States F. & G. Co. 163 Minn. 168, 203 N. W. 612; In re Estate of Henry, 207 Minn. 609, 292 N. W. 249.

memorandum which should have governed the drafting of the decree was for some reason overlooked. No reason whatever occurs to us why the court would have deliberately refused to assign the residue in the manner provided by the stipulation had the matter been called to his attention. By his own testimony it is clear that the court did not in fact read the decree. Under such circumstances it cannot be treated as the product of his independent judicial judgment.

While we do not wish to encourage the amendment of decrees made necessary by the court's failure to examine in detail the orders which he executes, nevertheless we recognize the practical necessity for the court's relying on competent clerks and scriveners to draft accurately the great number of documents which cross his desk each day.

In the instant case the rights of no third persons have intervened, and we find the delay resulted in no prejudice which would give rise to an application of the doctrine of laches.

Our Probate Code has adopted the common-law doctrine of retainer and provides that a claim of an estate against a beneficiary shall be included as an asset of the estate and specifically decreed to him.[5]

Having found that the probate court had the power to amend the decree, it was proper for the district court to assign to Mrs. Barrett as a part of her distributive share the amount necessary to retire Mrs. Pastoret's debt to the bank, as the stipulation provided.

2. The trial court held that by stipulating that the amount of the bank's claim could be deducted from her distributive share, and by demanding that the bank be paid to stop the running of interest, with knowledge that stock would have to be liquidated for that purpose, Mrs. Barrett in effect asked for an advance or for a partial distribution of her share of the estate.

A partial distribution under our Probate Code[6] cannot be effected without securing a specific order of the court authorizing it. Absent

---

[5] § 525.481, paragraph 4; In re Estate of Lindmeyer, 182 Minn. 607, 609, 235 N. W. 377, 378; In re Guardianship of Overpeck, 211 Minn. 576, 585, 2 N. W. (2d) 140, 145.

[6] Minn. St. 525.482.

such an order, the representative may legally make an advance to a beneficiary ultimately entitled to share in the estate, but only at his own risk. Such an advance accepted by a beneficiary is thereafter binding on him.[7]

Coming then to the basic issue, we are confronted with a fact situation which at first blush appears to require an adjustment in favor of Mrs. Macdonald because of the necessity for selling stock which has since greatly appreciated in value, to retire the estate's obligation to the bank. However, we are not persuaded that this purely fortuitous circumstance should result in a form of distribution to which Mrs. Barrett has never consented. In order to constitute an advance, it seems clear that there must either be an agreement that a part of the assets of the estate will be distributed by the representative without the court's authority, or an acceptance by the beneficiary if there is no agreement. In her stipulation Mrs. Barrett made no mention of an advance or partial distribution or the payment and acceptance of cash or securities. She merely agreed that she was indebted to the estate in an *amount* equal to the bank's claim and that if the claim were paid, that *amount* should be deducted from her share of the estate. Neither at the time the stipulation was entered nor at the time that the claim was paid did anyone contemplate or suggest that Mrs. Barrett would be liable for more than the sum of money which was paid to the bank.

It should be kept in mind that no specific stock transaction resulted in the sale of 1,594 shares of Minnesota Mining. On the contrary, between November 30 and December 7, 1956, in anticipation of expenses of administration, a total of 3,500 shares were sold in blocks of a hundred or more. However, at the average price sold, $103,000 represented approximately 1,594 shares.

In support of her argument that this was an advance, Mrs. Macdonald assumes that the estate was *not* liable to the bank on Mrs. Pastoret's note and that in selling the stock and paying the bank the representatives were merely accommodating Mrs. Barrett. We find no basis for this assumption. The estate had absolutely no defense to

[7]Kraus v. Kraus, 81 Minn. 484, 84 N. W. 332.

the claim of the bank, which had only to foreclose its collateral to secure payment. Had Mrs. Barrett not acknowledged an obligation to the estate, the representatives would have been required to sell sufficient stock to pay the bank's claim and would have thereafter found it necessary either to assign to Mrs. Barrett her indebtedness to the estate, if she acknowledged it, or bring an action against her to establish the debt. Had this occurred, the stock liquidated to pay the bank could not have been treated as an advance under any theory. This being so, we fail to understand how the transaction can be converted into an advance by the agreement of a beneficiary that she owes the estate the amount of the claim and is willing to have her distributive share adjusted accordingly.

If Mrs. Macdonald's theory is sound it must apply both ways. For example, if at the time of distribution, the value of Minnesota Mining has depreciated to one-half of the amount which it represented at the time the bank was paid, it is highly unlikely that Mrs. Macdonald would consent to a deduction of merely 1,594[8] shares (equivalent to only $50,000) from Mrs. Barrett's part of the residue, in satisfaction of her debt. While such a result would be manifestly unjust, we believe it would be equally unfair to deduct from Mrs. Barrett's legacy property valued at $285,000 in payment of a debt of only $103,000.

We therefore hold that in the absence of a clearly expressed agreement to treat the transaction as an advance, the actual number of shares of stock sold to pay a valid claim against the estate is not necessarily the number to be deducted from the distributive share of a beneficiary who has acknowledged an indebtedness to the estate in the amount of the claim.

3. The question which remains is the date as of which assets in the estate shall be valued for purposes of applying the doctrine of retainer where there is insufficient cash from which to deduct the beneficiary's debt. In the instant case we must determine whether the value of the assets in kind which are to be disproportionately divided shall be taken as of the date of the final account, the date of the

[8]Now increased to 4,782 shares by a subsequent stock split.

decree of distribution, or the time of the actual transfer to the beneficiaries.

A number of courts have considered the related problem of assigning values to securities for tax purposes or for distribution in kind.[9] It is the general rule that under such circumstances the value of assets shall be determined as of the time of actual physical transfer. There are sound reasons for following this procedure. Until such time as a legatee receives custody of the property to be assigned, he is at the mercy of the vagaries and fluctuations of the market. In the ordinary course of administration the representative is the one who determines the time for distribution, subject only to the ordinary and extraordinary problems which may arise in connection with protracted litigation or the assessing of state and Federal taxes. It would be grossly unjust to adopt a rule fixing an arbitrary date for assigning values if the prospective assignee cannot from that time forward exercise his own judgment and control over the liquidation and reinvestment of his assets to hedge against the possibility of losses if the market declines. Conversely, it would be unfair in the case at bar to fix values as of the time of the entry of the decree or the final account when thereafter a rising market distorts the percentages or proportions of the estate to which the legatees are entitled. In order to avoid inequities in situations of this kind, we hold that the value of assets to be distributed in kind shall be determined as of the date of transfer. Translated into the facts of the instant case, it will therefore be necessary to deduct from Mrs. Barrett's share of her mother's estate the number of shares of stock in Minnesota Mining or in other issues, the market value of which will equal $103,111.10 as of the date of actual transfer to Mrs. Barrett.

Reversed and remanded.

The opinion filed herein on March 9, 1962, is withdrawn and the foregoing opinion is substituted in place thereof.

KNUTSON, CHIEF JUSTICE (concurring specially).

I concur in the result. I cannot agree that when a judge of the pro-

---

[9]Hart v. Burke (3 Cir.) 108 F. (2d) 82; King v. Citizens & Southern Nat. Bank (Fla. App.) 119 So. (2d) 67; In re James' Estate, 65 N. Y. S. (2d) 756; In re Simpson, 32 N. J. Super. 85, 107 A.(2d) 827.

bate court, or any other court, signs an order such as a final decree it is not a judicial determination of the matters contained within the decree. It is the obligation of the judge to know what he signs. To permit him to hide behind a claim that the decree or order was prepared by an assistant or clerk, and that he is not chargeable with knowledge of what is in it, will destroy the finality of all judicial decrees. It is my opinion that we should hold that the judge is chargeable with knowledge of what he signs and that when the probate court signs a final decree it is a judicial determination of the matters therein contained.

MURPHY, JUSTICE (dissenting).

It seems to me that all of the material facts in this case were fully considered and the controlling principles of law correctly applied in the original opinion of Mr. Justice Frank T. Gallagher.[1] Accordingly, I respectfully dissent.

---

[1] The opinion of Mr. Justice Frank T. Gallagher read in part as follows:

"1. In her appeal to this court appellant sets out 36 assignments of error, several of which attack the findings of the trial court as not being sustained by the evidence. No motion was made for a new trial. Where there is no motion for a new trial this court is limited, on appeal from a judgment, to a consideration of whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment. Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640; Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461; Hickman v. Sutherland, 222 Minn. 161, 23 N. W. (2d) 593. We must also review the evidence in the light most favorable to the prevailing party.

"With those rules in mind it is our opinion, from examination of the record in its entirety, that the evidence here does sustain the findings of fact of the trial court and that those findings sustain the conclusions of law and judgment. It will serve no useful purpose to further extend this opinion with a detailed recital of all of the testimony submitted. We are satisfied from the examination of the record that the trial court was justified in finding that the error in the original final decree of the probate court, which was later amended, was a clerical one and not an error of law.

"It seems obvious from the testimony, as well as the stipulation, that the failure of the probate court, in the original final decree, to charge the bank's claim to the distributive share of appellant was unintentional, and that it was a clerical error of an employee in the probate court office rather than a con-

NELSON, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Murphy.

sidered judicial determination on the part of the probate judge. It also appears from the record that the scrivener overlooked the stipulation and therefore failed to charge her distributive share with the shares of stock sold to pay the bank's claim. The probate judge admitted that he thought he had not read the original decree prior to its execution and filing and frankly stated that it was the result of a mistake or inadvertence on his part and that of the scrivener.

"2. While from the stipulation it appears that decedent borrowed $100,000 from the bank and gave her promissory note therefor and pledged her stock as collateral security, it also clearly appears from the same stipulation that Susan P. Barrett acknowledged liability for the full amount of said indebtedness together with interest. The money borrowed was used by Mrs. Barrett's husband in a business venture in California. It also appears, without dispute, that her attorney asked one of the representatives of said estate to make payment of said indebtedness immediately so as to stop the running of interest. The attorney also took the position and informed the representatives that whenever payment was made it should be a charge against Mrs. Barrett's interest in the estate. At the time this request was made, it was known to both Mrs. Barrett and her attorney that it would be necessary to sell Minnesota Mining stock since there were insufficient funds in the estate with which to make such payment.

"After a careful consideration of the facts it is our opinion that the representatives during the course of administration made an advance to appellant of the amount of the common stock which was required to be sold to enable payment to be made of the $100,000 owing to the bank with interest. This is not an uncommon practice in probate court matters. The rule is well stated in 7 Dunnell, Dig. (3 ed.) § 3653, as follows:

" '* * * A representative may distribute funds of the estate to the parties entitled thereto as heirs, legatees or devisees without a decree of distribution, but he does so at his peril. He assumes responsibility for distributing to the proper persons and in the proper amounts.'

"In 21 Am. Jur., Executors and Administrators, § 448, the rule is thus stated:

" 'Advances may be made by an executor or administrator to legatees or distributees prior to a partial or final distribution. Obviously, where such advances are made, they should be deducted from the respective shares of the legatees or distributees upon the distribution of the estate.'

"Appellant's claim that she is entitled to participate equally with her sister in the distribution of all Minnesota Mining stock still owned by the es-

Mr. Justice Sheran, not having been a member of this court at

tate at the time of the issuance of the final decree, because there was a failure to make partial distribution in accordance with Minn. St. 525.482, is clearly without merit. The representatives did not rely upon this statute and made no effort to comply with it. The feature distinguishing a partial distribution under § 525.482 from an advance made during the course of administration is that in making a partial distribution under the statute a representative is relieved of all liability whereas in making an advance during the course of administration he does so at his peril. In the instant case the advance was in all respects proper since appellant was entitled to receive a good deal more than the amount of the advance. To permit her now to repudiate what was done and to share the remaining stock equally with her sister would in our opinion be improper.

"The trial court was within its rights in charging her with the $103,111.10 paid out in her behalf and in decreeing to her 1,594 shares less of Minnesota Mining stock than was decreed to her sister.

"Since the above opinion was prepared, a dissent has been written. We believe that the above opinion has already considered the objections raised in the first part of the dissent. With respect to that part of the dissent disagreeing with the court's holding that the original final decree could be amended as was done here, we also refer to our opinion above. It is still our opinion, under the record here, that a clerical error existed and that the probate court could correct it by reason of § 525.02, which states that the probate court shall have power (§ 525.02[4]):

" 'To correct, modify, or amend its records to conform to the facts, and to correct its final decrees so as to include therein property omitted from the same or from administration.'

"The cases decided under this statute have uniformly assumed that the probate court possesses the same powers as the district court respecting amendment of decrees. See, also, Pearson, *Minnesota Probate Practice*, 20 Minn. L. Rev. 707, 718.

"While the court's power to amend its decrees cannot be used as a cover for correcting judicial error after the time for appeal has expired, In re Estate of Turner, 181 Minn. 528, 233 N. W. 305, this court has often recognized that clerical error on the part of the judge can be corrected at any time.

"In McClure v. Bruck, 43 Minn. 305, 45 N. W. 438, an action in ejectment, the plaintiff's attorney drew up findings which the court signed, giving plaintiff more land than he claimed in his complaint. The court corrected its judgment more than a year later and this court affirmed. As stated by Mr. Justice Mitchell (43 Minn. 307, 45 N. W. 438), 'The court had the un-

the time of the argument and submission or the reargument, took no part in the consideration or decision of this case.

---

doubted right, at least as long as the judgment was unexecuted, upon its attention being called to the fact, to correct its own records, so as to make the findings and judgment conform to what it intended they should be.' Again in Chase v. Whitten, 62 Minn. 498, 500, 65 N. W. 84, 85, this court affirmed an amendment of a judgment which had erroneously declared a mortgage void, stating through Mr. Justice Mitchell that 'the judicial mind never assented to the proposition that the mortgage was void, but * * * the order was worded as it was through the clerical mistake or inadvertence of the judge.'

"In United States Investment Corp. v. Ulrickson, 84 Minn. 14, 86 N. W. 613, 1103, the district court had entered a deficiency judgment in a foreclosure proceeding and later amended the judgment by striking the reference to the deficiency judgment. This court affirmed, saying (84 Minn. 20, 86 N. W. 616), 'The fair inference is that it was not the original intention of the court to find that the plaintiff was entitled to a judgment for a deficiency, and that the amendment was made to make the record conform to the facts.'

"In the instant case it is our opinion that considering all of the circumstances it is apparent that the judicial mind did not intend the results reached in the probate court and that in the interests of justice the amendments were proper after the appeal period had expired.

"Affirmed."