In the Matter of the Trusts Termed "A" and "B" under the Last WILL and Testament of Donald J. KELLY, Deceased.

Grace M. Kelly COLE, Petitioner, Appellant,

v.

Colleen K. HAYES, et al., Respondents.

No. 47460.

Supreme Court of Minnesota.

May 19, 1978.

Robert R. Biglow, Minneapolis, for appellant.

LeFevere, Lefler, Pearson, O'Brien & Drawz, Minneapolis, for respondents.

Heard before TODD, SCOTT, and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order of the district court denying, with a single exception, appellant petitioner's requests for relief, which included, among other things: the discharge of the trustees of two trusts (Trust A and Trust B) and the appointment of new trustees; the tracing of certain assets in Trust B; the imposition of a constructive trust for the benefit of appellant upon one-half of the assets traced in Trust B; and the distribution to appellant of a portion of the corpus of Trust A.

Appellant is the widow of Donald J. Kelly, who died August 22, 1958, and was survived by appellant and four daughters. His will provided that after the distribution of certain real and personal property the re-

mainder of the estate was to be divided into two parts, to be held in a marital trust (Trust A) and a residuary trust (Trust B). The corpus of Trust A essentially was to be—

> " * * * composed of assets of [his] estate of a value equivalent to one-half (½) of [his] 'adjusted gross estate' as defined in the Federal Internal Revenue Code * * * which also qualifies as marital deduction property within the meaning of said Code * * *. The value of each asset * * * shall be the value thereof, in each case, as finally determined for Federal Estate Tax purposes in connection with [his] estate."

The rest of decedent's assets, after payment of all taxes on the estate, was to become the corpus of Trust B.

The income from Trust A was to be paid to appellant; the principal was not, except as follows:

> "In event of any emergency, such as a prolonged illness or accidental injury requiring hospital and medical care, my Trustees may pay to or expend for the benefit of my wife sums from the principal of the trust fund if in their judgment her income from this trust and from other sources is not sufficient to cover the expenses incident to such emergency."

The income from Trust B was to be used, as necessary, to guarantee that appellant had a minimum annual income of $12,000. The remaining income was to be paid to decedent's children in equal shares.

The value of Mr. Kelly's adjusted gross estate was $1,067,464.08. After applying the provisions of the will, the Hennepin County Probate Court set the value of Trust A at $470,161.98. This sum was distributed to Trust A in cash, while Trust B received cash, real property, and personal property, including 30,344 shares of Control Data Corporation stock valued at $82,-278.07.[1]

The will appointed appellant, decedent's eldest living daughter (respondent Colleen K. Hayes), and the First National Bank of Minneapolis as cotrustees of both trusts. It also provided that should one of the named individuals become unable to act as trustee, decedent's next eldest living daughter should be substituted. Pursuant to this provision, Margaret K. Lickteig was substituted for appellant on April 27, 1977, after appellant had been involuntarily committed to the Golden Valley Health Center on February 10, 1977, suffering from organic brain syndrome and paranoid psychosis.

Appellant brought the present action in July 1976, alleging that her cotrustees had breached their fiduciary duties to her by causing an improper or illegal initial distribution of assets between the two trusts; by improperly managing Trust A; and by refusing to pay $31,000 in debts which allegedly should have been paid from the Trust A corpus under the will's "emergency clause." The trial court ruled that, as to the first two contentions, petitioner failed to state a claim for which relief could be granted because she had allowed her legal remedy under Minn.St.1974, § 525.71(12), to lapse and because she was barred by laches from seeking equitable relief. The trial court resolved the "emergency" issue by allowing those debts "on their face related to Petitioner's obligations for medical care and treatment" to be paid from the principal of Trust A.

We affirm the order of the district court with respect to the distribution and management of trust assets, but reverse and remand for further determination as to the nature of appellant's debts for which payment is sought pursuant to the "emergency clause."

First, as to the initial distribution of trust assets, Minn.St. 525.712 provides that appellant had a period of 6 months following the decree of distribution in which to bring an appeal to the district court under § 525.71(12). This decree was issued on December 17, 1963, and thus appellant's legal right to appeal has long since lapsed. Such a decree, if not properly ap-

---

1. This was determined to be the Federal estate tax value; that is, the value of the stock as of the date of decedent's death. See, 26 U.S.C.A. § 2031.

pealed, is not subject to collateral attack. See, *Barrett v. MacDonald,* 264 Minn. 560, 121 N.W.2d 165 (1963); *Bengtson v. Setterberg,* 227 Minn. 337, 35 N.W.2d 623 (1949). Further, casting the collateral attack in the form of an equitable action for the imposition of a constructive trust does not enable appellant to avoid the force of these holdings. Appellant was an executor and a trustee during the period of distribution. In her capacity as trustee, she joined in three petitions, between 1964 and 1973, which resulted in court orders ratifying the actions of the trustees. These circumstances provide adequate support for the trial court's determination that laches bars appellant from an equitable challenge to the distribution of assets between the trusts. See, *Knox v. Knox,* 222 Minn. 477, 486, 25 N.W.2d 225, 231 (1946). Similarly, her participation in the management of both trusts precludes appellant's present assertion that her cotrustees breached a fiduciary duty to appellant in her capacity as beneficiary.

 With regard to appellant's claim that certain of her debts should be paid from the corpus of Trust A, however, we hold that the trial court's construction of the will's "emergency clause" as barring payment of debts not "on their face related to [appellant's] obligations for medical care and treatment" was overly narrow.[2] Read as a whole, the will indicates that the testator's intent was to provide for the possible payment out of the Trust A corpus for a wider range of appellant's needs than medical care alone. First, she is the sole beneficiary, so, unlike the situation in *In re Trusteeship Under Will of Whelan,* 263 Minn. 476, 116 N.W.2d 811 (1962), there are no remaindermen's interests to be considered. Second, the reference to "medical care" in the phrase "any emergency, such as a prolonged illness or accidental injury requiring hospital and medical care" apparently was intended to show one example of the type of emergency expense for which invasion of the corpus is justified and was not intended to be the sole possible basis for such payment. In these circumstances, this court's view is that the "emergency clause" should be liberally construed to serve its essential purpose, the alleviation of appellant's unanticipated hardship.

Nevertheless, it is also clear from the will that the Trust A corpus was not to be invaded to pay appellant's normal living expenses; the provision of a minimum guaranteed income of $12,000 per year seems to have been directed to that end. See, *In re Trust under Will of Cosgrave,* 225 Minn. 443, 31 N.W.2d 20 (1948).

Appellant sought payment of 35 debts totaling approximately $31,000 under the "emergency clause." The debts that are clearly related to treatment for appellant's illnesses and debts that represent legal expenses should be paid pursuant to the "emergency clause." In addition, because appellant's condition often manifested itself in the form of irrational spending, debts that are related to that mental condition should be paid. Payment of those debts in the category of routine living expenses should be denied. We remand the case for a further hearing at which evidence may be presented which will enable the trial court to determine the sources of those debts of appellant which cannot be categorized from an inspection of the face of the debt list. In all other respects, the order of the trial court is affirmed.

Affirmed in part, reversed in part, and remanded with instructions.

OTIS and PETERSON, JJ., took no part in the consideration or decision of this case.

---

2. The standard of review of findings based on documentary evidence adopted in *In re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225, 243 N.W.2d 302, 305, certiorari denied sub nom. *Arms v. Watson,* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976), permits this court on appeal to substitute its own reading of the will for that of the trial court.