Sylvia M. **BUCKMASTER**, as Personal Representative of the Estate of Daisy Murphy, Deceased, Plaintiff–Appellant,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 91–6210.

United States Court of Appeals,
Tenth Circuit.

Jan. 21, 1993.

**380**

James H. Rice, Midwest City, OK, for plaintiff-appellant.

Sara S. Holderness, Tax Div., Dept. of Justice (James A. Bruton, Acting Asst. Atty. Gen., and Kenneth L. Greene, Tax Div., Dept. of Justice, with her on the brief), Washington, DC, for defendant-appellee.

Before LOGAN and SEYMOUR, Circuit Judges, and BROWN, District Judge.[*]

LOGAN, Circuit Judge.

Sylvia M. Buckmaster, in her capacity as personal representative of the Estate of Daisy Murphy, deceased (the estate), appeals the district court's grant of the government's motion for summary judgment in the estate's suit for refund of income taxes levied by the Internal Revenue Service (IRS). The only issue on appeal is whether the estate is entitled to claim a

deduction under I.R.C. § 661 for income it distributed to estate beneficiaries during two of the estate's tax years. The disbursements were made without explicit authority under the will and without any prior order from the state probate court in Oklahoma; but the distributions were approved as part of the final accounting in the probate court's order of final settlement and again later by a nunc pro tunc order specifically referencing the payments.[1]

I

Daisy Murphy died testate on February 9, 1984, leaving a will that gave her entire estate to her niece, Sylvia M. Buckmaster, and to her nephew, Jesse Murphy, in equal shares. Murphy was named as executor. The will was admitted to probate, letters testamentary issued, and Murphy administered the estate until his death while this appeal was pending. The estate contained valuable mineral interests that earned significant royalties during the course of the estate's administration. Choosing for the estate a tax year ending January 31, 1985, Murphy distributed during that year $437,000 of the estate's income to himself and to Buckmaster in equal shares, and the estate took a deduction for this amount, plus Oklahoma gross production taxes and federal windfall profits taxes relating to that income, on the estate's income tax return. The estate remained open for another year during which it distributed $155,649.51 to the beneficiaries, again claiming similar deductions on the estate's income tax return. In neither year did the estate secure an order from the probate court authorizing the distributions before they were made, but the estate was closed out on February

[*] The Honorable Wesley E. Brown, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation.

1. The beneficiaries of the estate included the disbursements in both years as income on their personal income tax returns. *See* I.R.C. § 662(a). Jesse Murphy was the original plaintiff, suing individually and as personal representative of the Estate of Daisy Murphy, deceased. The suit included asking for a refund of income taxes Murphy paid personally on the distribu-

tion in the event the deduction to the estate was disallowed. The parties reached agreement on this refund claim, resulting in dismissal of any remaining claims in the suit, thus permitting us to exercise jurisdiction over this otherwise premature appeal. *See Lewis v. B.F. Goodrich Co.,* 850 F.2d 641, 645 (10th Cir.1988) (en banc). While the appeal was pending Jesse Murphy died and Sylvia M. Buckmaster was named successor personal representative of the Estate of Daisy Murphy, deceased. In this capacity she has been substituted as the plaintiff-appellant.

20, 1986. At that time the probate court issued an order of final settlement in which it approved all actions taken by the personal representative without the order itself referencing the specific disbursements to the beneficiaries. These distributions, however, apparently were shown on the executor's final accounting filed with the petition for final settlement, *see* Okla. Stat.Ann. tit. 58, § 612, and the probate court's order referenced the final accounting.

When the IRS notified the estate after an August 1987 audit that it was disallowing the deductions taken by the estate, the personal representative obtained from the probate court an order nunc pro tunc to reflect explicit approval of the disbursements. This did not satisfy the IRS, which issued a deficiency assessment disallowing the deductions as unlawful because there was no probate court approval before they were made. The estate paid the deficiencies with interest, filed claims for refund, which were denied, and then brought the instant suit in the district court to secure the refunds.

Both parties filed motions for summary judgment. The district court granted the government's motion, holding that the question whether the disbursements were "properly paid" for purposes of I.R.C. § 661 is one of state law, that they were not proper under Oklahoma law unless approved by the probate court in advance of payment, and that the nunc pro tunc order did not cure the defect.[2] The estate then appealed.

## II

The federal income tax law recognizes the estate of a decedent as a separate tax entity entitled to choose its own tax year ending at the end of any month not exceeding one year after the decedent's death. I.R.C. §§ 441(b), 443(a)(2), 641; Treas.Reg. § 1.443–1(a)(2). It also recognizes the right of the representative of the estate, when acting properly, to spread the income otherwise taxable to the estate between the estate and the beneficiaries. This is accomplished by allowing deductions on the estate's income tax return for income required to be distributed currently or in fact "properly paid" during the tax year to beneficiaries of the estate. I.R.C. § 661(a)(2). It is common practice for personal representatives of decedents' estates to make distributions of income during the estate's tax year either for the support or convenience of the beneficiaries or to obtain the advantages of having the income taxed in the lowest possible rates.

The only question in the instant case is the correctness of the district court's determination that the distributions from the estate were not "properly paid" unless the probate court approved them before they were made. It is acknowledged that the will did not require the payments. The law is that the determination of what is properly paid is a matter governed by local law. *See Freuler v. Commissioner*, 291 U.S. 35, 44–45, 54 S.Ct. 308, 311–312, 78 L.Ed. 634 (1934); *Simon v. Hoey*, 88 F.Supp. 754, 759 (S.D.N.Y. 1949), *aff'd*, 180 F.2d 354 (2d Cir.), *cert. denied*, 339 U.S. 966, 70 S.Ct. 1001, 94 L.Ed. 1374 (1950). We review the district court's determination of local law de novo. *Salve Regina College v. Russell*, —— U.S. ——, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

The United States Supreme Court has considered the issue before us in the context of distributions from a trust under California law. In *Freuler*, the Supreme Court found no meaningful distinction between pre-distribution and post-distribution orders: "[I]f the order of the state court does in fact govern the distribution, it is difficult to see why, whether it antedated actual payment or was subsequent to that event, it should not be effective to fix the amount of the taxable income of the beneficiaries." 291 U.S. at 44–45, 54 S.Ct. at 311–312. *Accord Commissioner v. Crawford's Estate*, 139 F.2d 616, 618 (3d Cir.

---

**2.** Because of our disposition we do not find it necessary to consider whether the nunc pro tunc order has any special significance.

1943) (Pennsylvania law); *Proctor v. White*, 28 F.Supp. 161, 166 (D.Mass.1939) (Massachusetts law).

A number of state court decisions have upheld post-payment approvals of personal representative's payments to beneficiaries. In *Siemon v. Mortgage Inv. Co. (In re Bennett's Estate)*, 13 Cal.2d 354, 90 P.2d 84, 89 (1939), the California Supreme Court rejected the probate court's holding that payments made prior to obtaining court approval were null and void, reasoning that as long as the administrator paid the correct person, he or she is protected regardless of whether prior court approval was obtained. *Accord Shivvers v. Mueller (In re Estate of Shivvers)*, 340 N.W.2d 586, 589 (Iowa 1983); *Barrett v. MacDonald*, 264 Minn. 560, 121 N.W.2d 165, 172 (1963); *White v. Freitag (In re Freitag's Estate)*, 165 Or. 427, 107 P.2d 978, 980 (1940); *In re Herman's Estate*, 138 Neb. 430, 293 N.W. 353, 354 (1940); *In re Estate of Kingseed*, 413 N.E.2d 917, 923 (Ind.Ct.App.1980).[3]

The government claims and the district court found that the law in Oklahoma is contrary to these other decisions, relying upon *In re Cook's Trust*, 192 Okl. 291, 135 P.2d 492 (1943). In that case, the Oklahoma Tax Commission sought to tax monies paid out of an estate to the beneficiaries as if those funds had been paid from a trust, which had been provided for by the decedent's will but which had never received any distribution from the estate because of protracted probate proceedings. The payments had been ordered by the probate court and agreed to by all parties. The court explicitly limited its review to "whether, for tax purposes only, said sums were constructively, though not actually, paid to the trustee so as to constitute taxable income of the trust." *Id.*, 135 P.2d at 493–94.

The court held that the disbursements were not properly taxable to the trust, be-cause the trust had no legal existence in the absence of a probate court order. In so holding, the court stated that "[u]ntil the county court makes an order for partial or final distribution of the estate of a decedent, the executor or administrator is without authority to deliver any of the estate to a trustee...." *Id.*, 135 P.2d at 494 (citation omitted). The district court relied heavily upon this language, interpreting it to mean that any payment made by an executor or administrator in the absence of prior court approval is per se improper, regardless of whether such approval is obtained after the fact. We believe the quoted language does not support such a broad conclusion.

In *Cook's Trust*, the probate court had ordered each payment before its being made, so the Oklahoma Supreme Court had no occasion to consider whether the payments would have been valid had they been made without prior authorization but later ratified by the probate court. The cited language does not foreclose after-the-fact approvals by the probate court. The key word is "until"; the distributions are unauthorized "until" court approval is obtained. Nothing in either *Cook's Trust* or the probate laws prevent after-the-fact ratification of disbursements by the executor or personal administrator, which would make them "properly paid" for purposes of I.R.C. § 661(a)(2). This is not to say that an executor is free to plunder an estate at will; the estate concedes that distributions made before receiving court approval are made at the representative's own risk. The personal representative must make an accounting to the probate court of all disbursements and expenditures, and the probate laws provide recourse if the personal representative fails to do so. *See* Okla. Stat.Ann. tit. 58, §§ 541–557. Once the probate court approves the final settlement and account, however, the personal repre-

---

**3.** We do not consider the cases the government relies upon, *Hurley v. Hirsch*, 66 S.W.2d 387 (Tex.Civ.App.1933), or *DuVall v. Faulkner*, 113 Ohio St. 543, 149 N.E. 868 (1925), to state a contrary rule. In *Hurley* the court made no reference to the propriety of payments made without a court order but later ratified; it was concerned with a claim for prejudgment interest only. *DuVall* involved a claim made by beneficiaries that was not submitted to the probate court before it approved final settlement. Each made isolated general statements cited by the government out of context.

sentative is discharged from liability for prior distributions. *Id.* § 691.

█ The sections of the Oklahoma probate laws concerning partial distributions, on which the district court and the government rely, are not to the contrary. One section expressly provides that an heir, devisee, or legatee (or personal representative acting on behalf of such an entity) may petition the court for his or her share of the estate if three months have elapsed following the issuance of letters testamentary. Okla.Stat.Ann. tit. 58, § 621. This section is intended to provide recourse for heirs who believe that they are entitled to a share of the estate but have not received satisfaction from the executor; it says nothing concerning the need for the executor to obtain court approval before making disbursements to such individuals in the absence of a petition.

Our task is to determine how the Oklahoma Supreme Court, if presented with the issue before us, would rule. *See Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 871 (10th Cir.1992). The probate laws were not drafted with the income tax laws in mind. Rather, they exist to facilitate resolution of a decedent's affairs and distribution of the estate to the proper beneficiaries. Of course it would be better if the personal representative would secure advance probate court approval of distributions of income from the estate. But these decisions often must be made near the end of the tax year of the estate, when the amount of its income can be estimated reasonably. There may not be time to follow the normal procedures for probate court approval. In such cases the personal representative acts on his own at some peril. Nevertheless, a disbursement that operates to reduce the net tax liability of the estate and the beneficiaries and that does not contravene provisions of the will would almost certainly meet with the approval of the probate court, as it did here.

█ We hold that the Oklahoma Supreme Court, if presented with the issue, would consider distributions of estate income by an executor or administrator made without prior probate court approval but

subsequently ratified by that court to be "properly paid" within the definition of I.R.C. § 661(a)(2). This is the position of every appellate court that has directly considered the question, including the United States Supreme Court. The decision of the district court is therefore reversed, and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.