## STATE v. CHARLES E. FRENCH.[1]

July 30, 1926.

No. 25,473.

**Declaration of deceased girl properly excluded as irrelevant.**

1. In a case where manslaughter is charged as the result of an unlawful operation for the purpose of an abortion, a statement of the deceased girl to her mother sometime before the operation, indicating not who would perform the operation but only that she had consulted some physician other than defendant, *held* properly excluded for lack of relevancy.

**When defendant cannot complain of use of copy of record.**

2. There was in court the original daily record of a station of a city fire department showing the hours during which a witness was on duty there. That book was produced and its authenticity vouched for by defendant. He produced also, thereby vouching for their correctness, copies of that record for two different weeks. He offered in

[1]Reported in 210 N. W. 45.

evidence one of such copies and it was received without objection. The state then offered the other copy and it was received over defendant's objection. *Held* that defendant cannot complain, for lack of foundation, of the use of the copy so produced by him but used as evidence by the state.

### Impeachment of dying declarations.

3. Dying declarations may be impeached in the same manner as other testimony. The charge to that effect is without error.

### Denial of new trial not an abuse of discretion.

4. · Under the circumstances stated in the opinion, it is *held* not an abuse of discretion to deny a new trial, notwithstanding some of the new evidence, if believed, would result in an acquittal, one of the grounds for such holding being that such evidence is flatly contrary to the testimony of both defendant and his wife.

Criminal Law, 16 C. J. p. 1049 n. 82; p. 1050 n. 84; p. 1206 n. 94; 17 C. J. p. 211 n. 4, 5.
Homicide, 30 C. J. p. 272 n. 24; p. 273 n. 39; p. 281 n. 49.

See note in 56 L. R. A. 441; 1 R. C. L. p. 548; 1 R. C. L. Supp. p. 193; 4 R. C. L. Supp. p. 40.
See 20 R. C. L. p. 290; 3 R. C. L. Supp. p. 1051; 4 R. C. L. Supp. p. 1351; 5 R. C. L. Supp. p. 1096.

Defendant appealed from a judgment of the district court for St. Louis county, Grannis, J., convicting him of manslaughter in the first degree. Affirmed.

*Theo. Hollister*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy Attorney General, and *Mason M. Forbes*, County Attorney, for respondent.

STONE, J.

Convicted of manslaughter in the first degree, defendant appeals from the judgment. The death of a young woman is charged by the indictment to have been the result of an unlawful operation by defendant for the purpose of procuring an abortion. He is accused

of having operated on the deceased May 27, 1925. The evidence, when the state rested, had fixed that date but it had been indicated that there might be a change to the 19th or 20th of May, 1925, as the date of the offense. The defendant had not gone far with his own evidence when the state asked leave to reopen its case for the purpose of permitting its principal witness, whose recollection apparently had been refreshed by the records hereinafter discussed, to change his testimony, as to date only, so as to indicate that the operation was on the 20th rather than the 27th of May, 1925. The defense objected to that application and was sustained, the court indicating however, if not with their acquiescence at least without objection from counsel for the defense, that the correcting evidence as to date would be admitted as a part of the state's rebuttal. It was so admitted and the evidence for the state finally such that defendant must be considered as having been convicted of an operation which took place on May 20th and not on May 27, 1925.

1. The dying declaration of the unfortunate young woman was received without objection. Unqualifiedly, it charges defendant with having operated upon her for the purpose of producing a miscarriage. It goes farther and names one Jeanetta, then a member of the Duluth City Fire Department, as the author of her pregnancy. Deceased stated that she went to defendant after Jeanetta had told her he had arranged with Dr. French for the operation. When the mother of the girl was on the stand, she was interrogated concerning a conversation with her daughter on an occasion when the latter came home after having seen a doctor. The state objected on the ground of hearsay and was sustained. The mother was then asked this question: "When she gave the name of the doctor to you, was it Dr. French's name she gave?" The objection was repeated. The answer, interposed apparently notwithstanding the objection: "No, sir, she did not," was stricken out, defendant excepting. These rulings are assigned as error upon the ground that the mother's statement should have been admitted in impeachment of the dying declaration. It is argued, correctly enough, that dying declarations may be impeached by the same means as any other

testimony. But that argument does not touch, or at least does not control, this problem. There was no offer on the part of the defense to prove that the girl named to her mother some doctor other than defendant as having operated on her. The question then is, did the mother's answer have sufficient relevancy in contradiction of the dying statement so that its exclusion was error? That question we answer in the negative, for, so far as the record shows, the girl's answers to her mother on the occasion in question could have referred as well, and possibly did refer, to some physician she had consulted and who, if asked to do so, had refused to operate rather lawfully.

2. An important part of the evidence for the state is the testimony of witness Jeanetta. He testified to having arranged with defendant for the operation and first gave May 26, 1925, as the than the one who, when so requested, had agreed to operate undate. He was a fireman and a record of his time on duty was kept at the station where he served. After a reference to that record, he changed his testimony as to date and put the consultation with defendant on May 19th. That change was made under the circumstances already referred to. Defendant produced Exhibit D, the book containing the original daily time record of the station where Jeanetta was employed. There is no question as to its authenticity and if there were, defendant could not complain for he produced and vouched for the book. Defendant's Exhibit 3 is a copy of the daily record, from Exhibit D, for the week including May 26th and 27th, 1925. It shows that during that week Jeanetta, a pipeman, was on the night shift. State's Exhibit C, also originally produced by counsel for defendant, is a copy of the same record for the week of May 19th and 20th, and shows that Jeanetta during that week was on the day shift, and that on Tuesday, the 19th, he was off duty for three hours when one Walzack worked for him "paying back time." The defense introduced, after a foundation which counsel deemed sufficient, Exhibit 3, covering the week of May 26th and 27th. Without any additional foundation, the state asked for and offered in evidence, and it was received, Exhibit C, the record for the week

including May 19th and 20th. The introduction of the latter is now complained of by defendant as without foundation. The original book from which both exhibits were made was in court and open to examination and, so far as material, competent evidence. Defendant produced both exhibits, thereby vouching for their correctness and himself using one of them in evidence. In that situation, it is not now permissible for him to object, for lack of foundation, to either exhibit, in the absence of any specific complaint at the time, pointing out precisely a ground of the objection.

3. Much complaint is made concerning what is in and what is not in the charge to the jury. Taken as a whole, we do not consider it objectionable from any standpoint. Among the assignments of error predicated on the instructions, is one complaining because the jury was told that the weight and credibility of the dying declaration was for them "to determine the same as any other evidence." In that connection the jury were told correctly what circumstances were necessary in order to make a dying declaration competent at all and when so competent, it was for the jury to say what weight and credibility should be given it "just the same as any other evidence in the case." There is no error in that.

4. We now come to a phase of the case which has given us more difficulty than any other. The motion for a new trial was based, among other things, upon newly discovered evidence. None of it is material except that proffered by two witnesses whose affidavits indicate that defendant was in Minneapolis on May 19th and 20th, it being on the former day that Jeanetta, according to his corrected testimony, arranged for the operation and upon the latter that the operation took place. The new evidence is not cumulative merely and if believed would necessarily acquit defendant. Notwithstanding that, we decline to reverse. To do so would be to find that the learned trial judge had been guilty of an abuse of discretion. He had all the witnesses before him and was in a position much superior to ours for the purpose of enabling him to gauge the genuineness and effect of the new evidence. He fortifies his position fully in a memorandum which to us has been exceedingly helpful. He has

analyzed all the affidavits accompanying the motion for a new trial. Among other things, he says:

"The Evans people (the two witnesses now in question) live in Minneapolis and the defendant could easily have secured their testimony if it was thought advisable. The 19th and 20th of May [were] mentioned in the evidence as early as the first day on which testimony was taken * * *. At any rate, if they testified, as they state in their affidavits, the same would be inconsistent with the testimony of both the defendant and his wife" who testified during the trial that defendant had returned from Minneapolis on the "Sunday before the 19th and 20th, being the 17th of May" and that he was in Duluth on the 19th and 20th. The memorandum proceeds to the effect that: "The court is satisfied that to grant a new trial upon the grounds of newly discovered evidence, as requested, would upon the record of this case, be an abuse of discretion." There is so much foundation for that conclusion that we cannot reverse it.

The other assignments of error have all been considered and we find nothing in them requiring discussion.

Judgment affirmed.