IN RE APPLICATION TO REGISTER TITLE TO
REAL ESTATE.
JAMES F. HICKMAN AND ANOTHER v. MARY LEE
SUTHERLAND AND OTHERS.
MINNESOTA FEDERAL SAVINGS AND LOAN ASSOCIATION,
ADDITIONAL DEFENDANT, RESPONDENT.
C. R. SHEFVELAND, APPELLANT.[1]

June 14, 1946.

No. 34,158.

[1]Reported in 23 N. W. (2d) 593.

*C. R. Shefveland (pro se)* and *Francis M. Smith,* for appellant. *Myers & Myers* and *Harlan B. Strong,* for respondents Hickman. *Scott, Burke & Scott,* for respondent Minnesota Federal Savings and Loan Association.

JULIUS J. OLSON, JUSTICE.

This was a proceeding by James F. Hickman and wife to have the title to certain real estate in Minneapolis registered in their names. Among the many defendants joined in the proceedings, only C. R. Shefveland appeals from the decree, which sustained registration in applicants as joint tenants. No question is raised of any jurisdictional or procedural irregularity. As a matter of fact, the only issue to be determined here is whether the record sustains the findings and conclusions reached below to the effect that appellant has no right, title, estate, or interest in or lien upon the premises in question.

These are the facts: Marion P. Satterlee and wife became the fee owners of the premises on December 14, 1930, as joint tenants. From then and at least until April 22, 1941, the premises were in their possession and occupancy as their homestead. While so in possession, a personal judgment was entered and docketed against Mr. Satterlee on June 27, 1935. The judgment was not a lien on the homestead. Appellant secured an assignment of this judgment on February 17, 1944. He caused an execution to issue and a sheriff's sale to be had by virtue thereof, and at the sale became the purchaser of the property involved in this litigation. The usual sheriff's certificate was issued to him on June 8, 1944, and was recorded June 15.

In the meantime, taxes had become delinquent and tax sales thereunder had taken place. On May 17, 1940, the county auditor filed the statutory certificates that the time to redeem the premises had expired and that title absolute had vested in the state. That was the situation when the Satterlees, on January 11, 1941, entered into a written agreement with one Kern B. Fontaine. This instrument provided in substance that, if the legislature then in session enacted a proposed repurchase law giving the owners of forfeited lands a chance to repurchase them from the state upon easy terms, Fontaine would proceed to have the property placed in a state of repair so as to make it salable and would use the proceeds of the sale to cover all taxes, repay all old-age assistance claims against the same, the cost of repairs, and other needed expenses. Out of the purchase price, as and when sale was made, he was to receive five percent as commission, plus one-half of whatever the net proceeds exceeded the deductions indicated. As a part of this transaction, the Satterlees executed a quitclaim deed, the name of the grantee being left in blank, but with authority to Fontaine to fill in the name of such grantee as and when such purchaser was found. On March 5, 1941, the hoped-for act was passed, L. 1941, c. 43.

Thereupon, Fontaine immediately proceeded with the performance of his agreement. The Satterlees, however, remained in possession of the premises until April 22, 1941, when the repair work had so far progressed as to make it impossible for them to continue living there. Fontaine, on or about March 1, 1941, obtained a commitment for a loan of $3,500, which was contemplated to be sufficient to cover the cost of the liens, repairs, and mortgage expense referred to in his contract with the Satterlees. Fontaine procured one Albert N. Haglund to purchase the premises on May 28, 1941, and a warranty deed was executed by the Satterlees to him. This conveyance took the place of the quitclaim deed theretofore delivered to Fontaine when the original agreement with him was made. Haglund took possession on May 29, 1941, and remained in possession until September 9, 1942. On February 15, 1944, he conveyed the premises to the applicants herein, Hickman and wife, as joint

tenants, and on the next day the new owners executed a mortgage for $4,000 to Minnesota Federal Savings and Loan Association. The $3,500 mortgage given by Haglund has been satisfied of record.

On November 18, 1940, Mrs. Satterlee entered into a written lease with the state whereby the premises were leased to her for "occupancy" at the rate of seven dollars per month. She agreed that she would pay the water bill; that she would not assign the lease or sublet any part of the property covered thereby without the consent of the lessor; that she would keep the property and improvements in good condition; that she would commit no waste of any kind or permit such to be done by others; and that she would "keep and observe all laws, ordinances and regulations applicable to said land and premises and the use thereof." The state, as lessor, reserved the right to terminate the lease "upon 30 Days' notice in writing." Across the face of the lease certain entries appear to have been made in red ink, the important part of which is that "former owner will repurchase." The stipulated monthly payments were made until the premises were vacated by the Satterlees on April 22, 1941. This conforms with the facts already recited that they remained in possession until the date last mentioned. From then on, Fontaine was in possession with his repair crew and continued the work of repairing and reconditioning the premises pursuant to and in accordance with the terms of his contract with the Satterlees. That work continued from March 6, 1941, until and after June 27, 1941.

On May 16, 1941, the Satterlees filed an application with the county auditor to repurchase the premises from the state in conformity with the provisions of L. 1941, c. 43. The application was signed and acknowledged by both of them. We find therein this significant statement:

"Applicant states and shows that at the time of the forfeiture to the State of the said land for taxes hereinafter set out, they were * * * the owners in joint tenancy."

On June 26, 1941, the deed from the state was executed, the grantees being "Marion P. Satterlee and Ida V. Satterlee." It was recorded June 27, 1941, as appears from entry No. 134 of the abstract. Mr. Satterlee died December 5, 1942, his wife on July 18, 1944, both being residents of Minneapolis at the time of their deaths.

There was no motion made in the court below for a new trial or for amendments.

In the light of appellant's contentions, hereinafter to be discussed, we deem it desirable to refer to certain statutes which we think are of aid and guidance in our discussion of the issues before us.

Minn. St. 1941, c. 510 (Mason St. 1927, §§ 8336-8344), deals with homestead exemptions. Section 510.01 (§ 8336) provides:

"The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants."

(Appellant's judgment does not come within any of the statutory exceptions.) Section 510.04 (§ 8339) provides:

"If the debtor be married the homestead title may be vested in either spouse, and the exemption shall extend to the debts of either or of both. *Any interest in the land, whether legal or equitable, shall constitute ownership, within the meaning of this chapter, and the dwelling house so owned and occupied shall be exempt, though situated on the land of another."* (Italics supplied.)

Important, too, is § 510.07 (§ 8342), which provides:

"The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his

hands. He may remove therefrom without affecting such exemption, if he do not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the register of deeds of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family."

L. 1941, c. 43, § 1, provides:

"The owner at the time of forfeiture * * * may repurchase any parcel of land claimed by the state to be forfeited to the state for taxes, if such repurchase is made prior to November 1, 1941, unless prior to the time repurchase is made such parcel shall have been sold by the state as provided by law, * * *."

Appellant argues (1) that "the Satterlees were not joint tenants of the premises in question under the re-purchase agreement and the State deed"; (2) that, even if there was "such joint tenancy," it was "terminated by their joint deed to Haglund and the lien of appellant [under his judgment] was not terminated by the death of Marion P. Satterlee"; (3) that no sale was consummated prior to April 22, 1941, the date when the Satterlees removed from their homestead; and (4) that "the premises did not constitute the Satterlee's homestead at any time between the repurchase of same by them from the State and the conveyance of the same by them" to Haglund.

In the circumstances here shown, the only issues presented are whether the evidence sustains the findings and whether the findings sustain the conclusions of law.

We have fully recited the facts and have quoted applicable statutory law. The facts and the law clearly point the way to decision. The homestead law is and always has been considered a

.beneficent one and, as such, has been and should be given full force and effect. The Satterlees owned this property as their homestead. Being such owners and in actual possession at least until April 22, 1941, their ownership continued unless there was abandonment of the premises immediately thereafter. There is no proof of abandonment. The facts recited actually point the other way. From March 6 and until after June 27, 1941, Fontaine and his workmen were at their job of putting the premises in a proper state of repair. Under his contract with the owners, he had a reason for protecting the owners as well as advancing his own interest in the property. He was possessed of a title deed to be used when he might find a buyer. A buyer was found, and, while a new deed was used to transfer the title, it was not used in derogation of the authority originally given, but as a substitute for it. Fontaine's contract and possession for himself and the owners continued until the Haglund deal had been consummated.

Our decision law on the subject of abandonment of homestead rights has given definite directions to guide us. Thus, in Stewart v. Rhoades, 39 Minn. 193, 194, 39 N. W. 141, we had for consideration and determination the finding made by the trial court that the homestead owner had abandoned the same, and this, we concluded—

"is the only finding upon which its conclusion of law, that plaintiff is entitled to a lien, can rest; and, if such finding is not justified by the testimony, the judgment cannot be sustained."

Continuing, we said:

"The homestead right is one of the most valuable conferred upon a citizen. Through its beneficent provisions he is guarantied [sic] a home in adversity, a shelter for his family, of which he cannot be deprived without his consent. Not only has the legislature protected his dwelling from legal process, but it has expressly provided that no mortgage or other alienation of the homestead of a married man shall be valid without his wife's signature. *From the care that has been taken to provide for, secure, and protect this important right and privilege, it is obvious that no one can be deprived*

*of it without clear and convincing testimony of abandonment,
\* \* \*."* (Italics supplied.)

In Gordon v. Emerson-Brantingham Imp. Co. 168 Minn. 336, 210 N. W. 87, we again considered this question. Our prior cases were there carefully reviewed. There, also, the trial court sustained a verdict of the jury which had found that there was abandonment. In reviewing the record on appeal, we reached the opposite conclusion, saying (168 Minn. 341, 210 N. W. 88) :

"We are of the opinion that the court erred in denying plaintiff's motion for a new trial. The evidence, considered as a whole, fell short of showing *clearly and convincingly that McKenna ever intended to abandon his homestead. None of the facts point to such an intention with any degree of certainty and, unless additional evidence that such was McKenna's intention is produced, it cannot be held that his homestead became subject to the lien of defendant's judgment.*" (Italics supplied.)

The same thought was expressed in Bowers v. Norton, 173 Minn. 576, 578, 218 N. W. 108, 109, where we held:

"Abandonment of a homestead results when the owner removes therefrom and ceases to occupy the same, *with the intention of never returning or with no intention of returning thereto to reside.*" (Italics supplied.)

When the Satterlees on May 16, 1941, made their repurchase application, they were only seeking to reëstablish their original title. The application plainly so shows. The auditor's records confirm that intention. This occurred while Fontaine was in physical possession of their homestead as their agent and lawful possessor under an agreement coupled with an interest. Pursuant thereto, his possession continued at least until June 27, 1941. A month before that (May 28, 1941), the deed to Haglund was made, and he took immediate possession under it. If the original owners had not transferred the property, but had themselves taken possession of it, no one could or would question their homestead rights. Later,

the Satterlees, pursuant to their application to repurchase under the terms of the act, got the state's interest, whatever that might be. But they then had parted with their title to Haglund. His deed and right of possession under it constituted notice to anyone interested in ascertaining the facts. Our decision in Rooney v. Koenig, 80 Minn. 483, 486, 83 N. W. 399, 400, brings into play the generally accepted rule that, "where land is conveyed by a deed of general warranty, any superior outstanding title subsequently acquired by the grantor will inure to the benefit of the grantee and his assigns." Appellant's judgment never became a lien upon the homestead in the circumstances here shown.

The result reached below was clearly right. The decree sought to be overturned is affirmed.

Affirmed.

[1]Reported in 23 N. W. (2d) 582.