Jeanne Marie **VICKERY**, Appellant,

v.

**FIRST BANK OF LaCROSSE, The Telex Corporation, Respondents.**

No. CX–84–1889.

Court of Appeals of Minnesota.

June 4, 1985.

Review Denied Aug. 20, 1985.

Matthew S. Vickery, North Mankato, Patrick A. Lowther, Hector, for appellant.

Kent A. Gernander, Winona, for First Bank of LaCrosse.

Stephen J. Delano, Winona, for The Telex Corp.

Heard, considered, and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant Jeanne Marie Vickery from judgment entered after

a court trial in which Vickery's title to property was declared subject to the liens of respondents First Bank of LaCrosse (First Bank) and The Telex Corporation (Telex). We remand for entry of judgment for plaintiff on her declaratory judgment complaint.

## FACTS

The previous owners of the subject property in this case are Geraldine R. and John A. Williams, parents of the current owner Vickery.

In 1964, the Williamses purchased property in joint tenancy in Winona. During their residence there, they declared the property as their homestead and received the benefit of the homestead tax credit on their real estate taxes.

On June 20, 1981, the Williamses left to reside in Florida because John Williams obtained employment there. Prior to their departure, Geraldine Williams left employment at a local grocery store.

In the year prior to their departure for Florida, John Williams' business ventures failed. Several creditors obtained judgments against the Williamses jointly and John Williams individually. Pursuant to security interests, First Bank took possession of the assets of John Williams' businesses, forcing him out of business. He was subsequently unable to find employment in the Winona area, and went to Florida in the fall of 1980 to seek employment there. During this period of time, Geraldine Williams visited her husband in Florida, but returned to Winona. Eventually John Williams did secure employment in Florida. This position precipitated their joint departure in June 1981.

On May 11, 1981, the Williamses entered into a purchase agreement for the sale of their homestead to James and Kathleen Dirlam. The purchase agreement was contingent upon the Dirlams obtaining conventional financing. The trial court found that this sale was to close sometime after the Williamses' departure on June 20, that the Dirlams cancelled the purchase agreement "subsequent to the Williams' removal to Florida," and that when the Williamses left Winona on June 20, 1981, they did so assuming the property had been sold. There is no testimony or other evidence in the record to support these findings.

The Dirlam purchase agreement, the statement of credit denial, and the cancellation of the purchase agreement were not admitted into evidence at the trial. Testimony indicates that the purchase agreement could not be located at the time of the trial. The record is silent as to the other two documents. These documents show that conventional financing was denied the Dirlams on June 5, 1981 and that Mr. Dirlam signed a cancellation of the purchase agreement on June 12, 1981. These documents were not before the trial court at the time of Vickery's motion for a new trial. It is unclear just when these documents were discovered.

When they left Minnesota, the Williamses took only those effects that would fit into their leased car. Their furniture, appliances, and the remainder of their personal property remained in the house in Winona. Their sons Jimmy and John also remained in the house. Jimmy started his senior year at Winona High School in the fall of 1981. John had graduated from high school, was married, apparently separated from his wife, and was to be responsible for keeping the mortgage payments current.

The Williamses lived in Florida motels for one year. In 1981, they rented a furnished home there. Both eventually obtained Florida driver's licenses. On federal income tax returns, they listed their address as being their current Florida mailing address. They did not file Minnesota tax returns. (Florida does not have a state income tax.) Geraldine Williams did not vote in Florida. She had always voted in Minnesota previously. The record is silent as to whether John Williams voted in Florida. When the plates needed to be renewed for their leased car, they obtained Minnesota license plates.

Geraldine Williams returned to Minnesota and briefly visited her sons and the property in the fall of 1981. On October 21, 1981, she executed, acknowledged and filed a Declaration of Homestead for the property pursuant to Minn.Stat. § 510.07 (1980) within the requisite six months. She also returned to Minnesota and stayed at the property briefly on other occasions as well. There is a suggestion in the record that John Williams may have returned briefly to Winona in late 1981 or early 1982.

After the Williamses went to Florida, they continued to list the property for sale. They entered into another purchase agreement to sell the property to Mr. and Mrs. Stephan Rian in the spring of 1982. The Rians were permitted early access to the property in advance of the closing date to do maintenance tasks such as unplugging drains, cutting the lawn, washing the walls, and shampooing the carpets. At that time the property was unoccupied and there was no furniture in the house. Vickery asserts the property was vacated to allow the Rians early possession. The record is silent as to the length of time the property was unoccupied prior to when the Rians were allowed access to the property. Subsequently the purchase agreement with the Rians was cancelled due to the outstanding judgment liens.

While the son John was living at the property after his parents left for Florida, he required psychiatric care in a hospital. From December of 1981, he did not make the mortgage payments on the property. The mortgage was declared in default and a notice of foreclosure sale was published in the local Winona newspaper on June 4, 1982.

A neighbor in Winona called Vickery to notify her of the foreclosure sale and Vickery relayed the information to her parents. The Williamses were unable to pay the overdue mortgage payments. Vickery testified at trial that inasmuch as her parents wanted to keep the property in the family they signed the property over to her by warranty deed dated June 11, 1982. This deed was recorded on January 20, 1983.

Following the transfer of the property to her, Vickery reimbursed the mortgage holder for costs incurred in initiating the foreclosure proceedings, brought the mortgage balance current, and has kept it so. She asserts she has spent over $10,000 in maintaining and improving the property.

Vickery brought a declaratory action requesting that the trial court declare that the subject property was not abandoned by the Williamses within the meaning of Minn. Stat. § 510.07, and that she acquired title to the property free and clear of the judgments entered against the Williamses.

The Williamses were still residing in Florida at the time of the trial and did not testify. Geraldine Williams' deposition was admitted into evidence. In that deposition, she stated her intention when she left in June 1981 was to be away from the property only temporarily. She also stated that at the time of the deposition she was undecided regarding the permanency of residence in Florida.

Vickery was present when her parents were departing in June 1981. At trial Vickery's counsel attempted to elicit her testimony regarding her parents' intentions at that time. The trial court sustained hearsay objections as to that line of questioning. Vickery's counsel made no offer of proof. The trial court did, however, allow hearsay testimony regarding the Williamses' intent as to their departure from three defense witnesses.

Conclusionary testimony of Mary Frances Feist, a former employee of John Williams, indicates that John Williams was primarily concerned with finances prior to his departure for Florida in the fall of 1980. At that time he indicated to her no permanent intention to reside in Florida. Feist testified that in the spring of 1981 Geraldine Williams indicated a reluctance to leave Winona and her family and friends, but that Mr. Williams needed her in Florida. Feist visited Florida in the spring of 1983. John Williams indicated to her then

that he loved Florida and would like to see his family move there.

Andy Anderson was the realtor for the property at the time the Williamses signed the purchase agreement with the Dirlams. Over objection by Vickery's counsel, Anderson was allowed to testify regarding the intent of the Williamses in connection with the sale of the property to the Dirlams. He testified that the purpose of that sale was to finance the purchase of a home "in another place." He also testified that he suggested Geraldine Williams not quit her job at a local grocery store until the contingencies of the sale were satisfied. On cross examination, Anderson admitted neither of the Williamses expressly stated to him a permanent intention to leave Minnesota.

Stephan Rian also testified about the Williamses' intent, over objection of Vickery's counsel. On or about May 15, 1982, Rian spoke with John Williams regarding curing the defects in the title to the property. He testified that at that time John Williams had no plans of coming back to Winona and wanted the money "to go on to different things in Florida."

The trial court found that when the Williamses left the property on June 20, 1981 and continuing until the conveyance to Vickery on June 11, 1982, they had no intent to return to reside there, and their homestead rights in the property and the protection afforded by Minn.Stat. § 510.07 was lost.

On appeal, Vickery makes the following allegations: (1) the trial court's decision is not justified by the evidence and is contrary to the law; (2) that there was irregularity in the proceedings and abuse of discretion by the trial court; and (3) newly discovered material evidence necessitates a new trial.

## ISSUES

Is there clear and convincing evidence to support the trial court's finding of abandonment of the homestead exemption?

## ANALYSIS

Statutory law relevant to this appeal provides:

510.01 Homestead defined: exempt; exception.

The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated * * * shall constitute the homestead of such debtor and his family, and be exempt from seizure or sale under legal process on account of any debt * * *.

Minn.Stat. § 510.01 (1980).

510.07 Sale or removal permitted; notice.

The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands. He may remove therefrom without affecting such exemption, if he do not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family.

Minn.Stat. § 510.07 (1980).

■ The homestead exemption as provided above is a constitutional right pursuant to Article 1, Section 12 of the Minnesota Constitution. Strong public policy supports the statutory provisions regarding the homestead exemption. *Denzer v. Prendergast*, 267 Minn. 212, 216, 126 N.W.2d 440, 443 (1964), *Jensen v. Christensen*, 216 Minn. 92, 95, 11 N.W.2d 798, 799 (1943). Thus homestead laws are to be liberally construed. *Denzer*, 267 Minn.

212, 126 N.W.2d 444; *Jensen* at 95, 11 N.W.2d at 799.

Our state supreme court has stated:

The decisions of this court reflect a disposition to protect the person claiming homestead exemption as against those asserting the right to reach his assets in satisfaction of claims. A creditor is entitled in justice to be paid, and this is true whether his judgment be based on contract or tort. The homestead exemption law does not relieve one from his moral and legal obligation to pay what he owes. But experience has taught that in the long run obligations are more likely to be fulfilled by those whose connections with the community are stabilized by a protected interest in a relatively permanent place of abode than by those not so anchored. The result is that just claims of a particular claimant may be deferred or defeated. Nevertheless, review of our decisions, with special attention directed to the more recent ones, shows that the policy of giving the debtor "sanctuary" from just claims in his "homestead" has prevailed with significant uniformity. (citations to cases omitted).

*Denzer* at 216, 126 N.W.2d at 443.

■ Once a homestead right is established, the burden of proof shifts to the creditor to establish abandonment thereof by clear and convincing evidence. *Hickman v. Sutherland*, 222 Minn. 161, 23 N.W.2d 593 (1946). We must, therefore, determine whether in view of this high standard of proof, the public policy supporting the homestead exemption, and the mandated liberal construction of the applicable statutes, the trial court's decision can be upheld. We conclude that it cannot.

The trial court determined that when the Williamses left for Florida in June 1981, they did so assuming the property had been sold. Thus the trial court reasons in its memorandum that the Williamses permanently intended to abandon the property as their homestead at that time, and that there was no evidence of any saving change of intention. However, there is nothing in the record to indicate the sale

was still pending when the Williamses left for Florida. Therefore, the court's determination of the June 1981 intent to abandon must fall.

Because the trial court had already determined the intent to abandon was present when the Williamses left for Florida, it discounted Geraldine Williams' filing of the declaration of homestead. In its memorandum, the trial court states the filing "did not serve to preserve the homestead exemption already lost." This determination, too, must fall.

The trial court in its memorandum places reliance upon the fact that the Williamses continued to list their property for sale after they went to Florida; that they entered into another purchase agreement to sell the property in the spring of 1982; and, when that sale fell through, that they conveyed the property to their daughter to avoid mortgage foreclosure. Such facts, although supported in the record, cannot contribute to a determination of abandonment where, as here, the statute specifically provides for the sale of the homestead. See Minn.Stat. § 510.07.

■ "The right to sell and convey the homestead is absolute * * *." *First National Bank of Mankato v. Wilson*, 234 Minn. 160, 163, 47 N.W.2d 764, 766 (1951). Thus, the trial court's determination that the Williamses had only one opportunity pursuant to the statute for the sale proceeds of the property to be exempt, i.e., the proposed sale to the Dirlams, is erroneous.

■ The requirement of actual occupancy in the homestead definition is limited by reasonableness and is liberally construed. *Denzer*, 126 N.W.2d 440; *Cysewski v. Steingraber*, 222 Minn. 221, 232, 24 N.W.2d 266, 272 (1946). Constant personal presence is not required. *Cysewski* at 232, 24 N.W.2d at 272. The statute specifically provides that the owner of homestead property may remove himself from that property for business or pleasure without affecting his exemption if he does not abandon the same as his place of abode. However, if the period of absence is to be longer than

six consecutive months, the owner must file a declaration of homestead within the requisite six months or he shall be deemed to have lost the exemption. *Wilson* at 164, 47 N.W.2d at 767. Should the owner file a notice, the exempt status continues unless and until actual intention to abandon the premises as a homestead is established. *Cysewski*, 222 Minn. 221, 24 N.W.2d 266 (1946).

In this case, a declaration was filed within the requisite six months. This filing rebuts the statutory presumption that absence from a homestead for six consecutive months constitutes abandonment of the homestead. *Wilson* at 164, 47 N.W.2d at 767. The creditors must then show by clear and convincing evidence the Williamses had an actual intention to abandon the property as their homestead sometime between June 20, 1981, the date of their departure, and June 11, 1982, the date of the transfer of the property to Vickery, if their claims are to prevail.

The court lists three other factors in its memorandum to support its determination of intent to abandon: the fact that the Williamses didn't return (to reside in the property), the fact that the mortgage was not kept current, and the fact that the early right of possession was given to the Rians, who assert they found the property unoccupied and neglected.

The statute allows for an absence of five years and beyond, if other statutory requirements are met. We conclude the fact the Williamses did not return to reside at the property within the year in question, and that the Rians found the property unoccupied pursuant to their request for early access to the property, cannot be dispositive to a determination of abandonment. While such information properly may be considered, additional evidence of intent to abandon must be present. Furthermore, we find no basis for a determination that a homestead exemption is lost if a property owner does not keep the mortgage current.

The remaining evidence of intent to abandon reposes in the testimony of Feist, An-

derson, Rian, and the deposition of Geraldine Williams.

For the purpose of the examination of this testimony, we set aside our reservations regarding the trial court's stringent rulings against receipt of hearsay and conclusionary testimony proffered by Vickery, and its liberal ruling accepting those same categories of testimony by First Bank and Telex. A thorough review of the record leads us to conclude that the trial court did not err in determining that John Williams intended to abandon the homestead exemption. However, that same thorough review not only fails to reveal clear and convincing evidence of Geraldine Williams' intent to abandon, it fails to reveal any substantial evidence at all.

Rather, the evidence regarding Geraldine Williams uniformly indicates a great reluctance on her part to leave home in June 1981. She left behind both her family and the friendships she had formed in some seventeen years of living in the Winona community. The relocation to Florida was impelled by financial necessity and her perception that her husband needed her there. There is nothing in the record to indicate that Geraldine Williams changed her desire to return to Winona when the financial situation improved.

Given the strong public policy that supports the homestead exemption, we cannot conclude that Geraldine Williams' relocation to another locale for economic necessity, coupled with an uncertain date of return, constitutes an intent to abandon the property as her homestead. *See Gordon v. Emerson-Brantingham Implement Co.*, 168 Minn. 336, 210 N.W. 87 (1926); *Repenn v. Davis*, 72 Iowa 548, 34 N.W. 326 (1887); *c.f. Kramer v. Lamb*, 84 Minn. 468, 87 N.W. 1024 (1901).

We recognize that it has been held:
[T]hat, as head of the family, it is for the husband to determine and fix the domicile of the family, including that of the wife, so that when he and his wife remove from the homestead his intention

fixes the character of the removal as an abandonment.

*Kramer* at 471, 87 N.W. at 1026.

■ We cannot support such a result as *Kramer* dictates here. There is no determination in the trial court's finding that the Williamses actually established a new domicile in Florida during the critical time period. Their intentions were sufficiently tenuous that they lived in a motel for their first year in Florida. If a husband has not established a domicile for the family, his wife may claim a homestead exemption on property owned separately from the husband, and which otherwise satisfies other elements of a homestead. *Gussman v. Rodgers*, 190 Minn. 153, 251 N.W. 18 (1933). We believe the rationale of *Gussman* is broad enough to encompass the situation here.

■ Finally, we are unable to bifurcate the homestead exemption interests of the parties in this jointly-held property. If it has not lost its character as homestead property as to wife in the context of this marriage, we are unwilling to hold that somehow it has lost that character as to husband. To do so would violate both the broad public policy interests here present and the mandate that the applicable statutes be broadly interpreted in favor of the homesteader. Because we hold the homestead exemption was not abandoned, it follows that Vickery received title to the property free and clear of First Bank's and Telex's judgment liens.

In consideration of our determination regarding this issue of intent to abandon, we need not address the remaining issues raised by Vickery.

## DECISION

The trial court's determination that the parties intended to abandon their homestead exemption is not supported by clear and convincing evidence.

Reversed and remanded for entry of judgment for plaintiff on her declaratory judgment complaint.