In the Matter of Scott SALKIN.

No. C9–88–1200.

Court of Appeals of Minnesota.

Oct. 4, 1988.

Review Denied Nov. 23, 1988.

Marilyn B. Knudsen, St. Paul, for appellant Scott Salkin.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., John R. Owen, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, C.J., and FOLEY and NORTON, JJ.

## OPINION

NORTON, Judge.

Scott Salkin appeals from an order of commitment as a mentally ill person. We affirm.

## FACTS

On April 20, 1988, a petition was filed for the commitment of Scott Salkin as a mentally ill person. The petition alleged that Salkin had been under psychiatric care, but in the past six months had complied only sporadically with his medication. The petition also alleged that Salkin had a problem with marijuana, and had recently exhibited unusual and assaultive behavior.

A hearing on the petition was conducted over the course of two days. Testimony at the hearing indicated that on April 14 or 15, 1988, Salkin had been observed yelling and climbing on a sixth floor balcony, wearing only a sweatshirt and underwear; that his lease had been terminated because he had frightened cleaning crews, punched a hole in one of his apartment walls, and insisted that he was going to remove the wall; that on April 17, 1988 he punched the family housekeeper in the mouth and in the stomach; that on the afternoon of that same day his brother observed him running through the house, wearing no clothes, carrying a bottle of red wine vinegar and muttering to himself; that when confronted, Salkin ran at his brother, shouted a profanity, and hit him on the chin with a closed fist; that Salkin believed his brother had told him he had put bullets in Gary Gaetti's and Kent Hrbek's brains; and that when the police arrived, he asked one officer if he was Tim Laudner, if he wanted to smoke marijuana, and why he wouldn't "be a man and pull out [his] gun and shoot [him]."

Several friends and acquaintances of Salkin testified that he behaved in a normal fashion. Salkin himself testified that he had stopped taking his medication because it destroyed his creativity; that he did not intend to hurt the housekeeper; that his brother had appropriately called the police; and that he would attend AA and voluntary outpatient treatment for chemical dependency, and would quit using marijuana. Salkin also testified that he had been on recordings of David Bowie, Neil Young and Dire Straits, and had been adopted as one of the Talking Heads. Salkin's brother testified that it was not possible Salkin could be a professional musician.

Expert testimony indicated that Salkin was suffering from schizo-affective illness, a psychiatric disorder which affected his thoughts, mood, perception, and memory, resulting in the impairment of his judgment, behavior, and capacity to recognize reality and to reason or understand. One expert testified that hospitalization was essential because Salkin would not be willing to follow a treatment plan or voluntarily remain at the medical center.

Following the hearing, the court issued its findings of fact, conclusions of law and order for judgment committing Salkin as mentally ill to the Metropolitan Mount Sinai Medical Center. The order was adopted as the judgment on May 4, 1988.

On June 6, 1988, Salkin appealed to this court from the trial court's order for judgment. In his brief, Salkin raised and addressed an issue which he did not raise in his statement of the case.

## ISSUES

1. Has Salkin properly appealed from the trial court's order?

2. May Salkin raise an issue in his brief which was not raised in his statement of the case?

3. Are the trial court's findings supported by the evidence and sufficient to support Salkin's commitment as a mentally ill person?

## ANALYSIS

### 1. *Appealability.*

Minn.Stat. § 253B.23, subd. 7 (1986) provides that an appeal may be taken in mental commitment proceedings "from any order entered under this chapter as in other civil cases." Salkin's notice of appeal, statement of the case, and brief all indicate that he is appealing from the trial court's order entered May 4, 1988.

The trial court's order was reduced to judgment on May 4, as ordered by the trial court itself. *See* Minn.Stat. § 253B.09, subd. 2 (1986). Where an otherwise appealable order specifically directs entry of a judgment, the order is effective and final, and therefore appealable, only when the judgment is entered. *See Holliston v. Ernston*, 120 Minn. 507, 508, 139 N.W. 805 (1913).

In *In Re Schueller*, 426 N.W.2d 241 (Minn.Ct.App.1988), a recent special term opinion, we concluded that where the time for appeal from a judgment had expired, an appeal from the order for judgment was not timely and should be dismissed. *Id.* at 242. Here, on the other hand, an appeal from the judgment entered on May 4 would have been timely. Minn.R.Civ.App.P. 104.-01. Since the order in this case was certified as the judgment on the same day, and since the order and judgment are actually the same document, no prejudice is evident from Salkin's appeal from the order.

In *State v. Herem*, 358 N.W.2d 85 (Minn. Ct.App.1985), the defendant had appealed from an order denying his motion for a new trial or judgment of acquittal. This court ruled that the appeal was from a nonappealable order and therefore should be dismissed. The supreme court disagreed:

> This is not a case of a defendant trying to appeal from an order when he has no right of appeal. Defendant's right of appeal had matured. His only mistake was that his attorney did use the correct language in giving notice that defendant was exercising his right of appeal. We do not believe that Rule 28.02 requires a dismissal of the appeal in such a case. A notice of appeal should be liberally construed in favor of its sufficiency. Under this approach and under the circumstances of this case, we conclude that the dismissal was improper.

*State v. Herem*, 365 N.W.2d 771, 772 (Minn.1985).

In *Kelly v. Kelly*, 371 N.W.2d 193 (Minn. 1985) the supreme court also reversed our ruling that where a notice of appeal referred only to an amended judgment, no appeal was taken from the original judgment, and issues not affected by the amendment could not be raised. The supreme court again stated that a notice of appeal must be liberally construed in favor of sufficiency:

> Thus, a notice of appeal is sufficient if it shows an intent to appeal and the order appealed from apprises the parties of the issues to be litigated on appeal. A notice of appeal is not insufficient due to clerical errors or defects which could not have been misleading.

*Id.* at 195–96.

Accordingly, we conclude that Salkin's appeal is sufficient, despite the statement that he is appealing from the trial court's order.

### 2. *New Issue in Brief.*

Salkin claims in his brief that the trial court's findings are insufficient to support his commitment. The respondent county argues that because Salkin did not raise this issue in his statement of the case, the issue must be deemed waived.

The county cites no authority for this argument, and in fact none exists. We have stated that issues not raised in a statement of the case *or* brief are deemed waived (*see, e.g., In Re Miner*, 424 N.W.2d 810, 815 (Minn.Ct.App.1988)), *pet. for rev. denied* (Minn. July 28, 1988); however, we decline to hold that a statement of the case must include all issues to be addressed in the briefs. We specifically note that Form 133 requires only that a statement of the case contain a description of issues "proposed" to be raised on appeal.

3. *Evidence and Findings.*

█ Salkin argues that the evidence and the trial court's findings are insufficient to support his commitment. The trial court found that Salkin is a mentally ill person within the meaning of Minn.Stat. § 253B.02, subd. 13 (1986), which states:

"Mentally ill person" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to self or others as demonstrated by (i) a recent attempt or threat to physically harm self or others * * *. This impairment excludes * * * (c) brief periods of intoxication caused by alcohol or drugs, or (d) dependence upon or addiction to any alcohol or drugs.

Minn.Stat. § 253B.09, subd. 2 provides:

The court shall find the facts specifically, separately state its conclusions of law, and direct the entry of an appropriate judgment. Where commitment is ordered, the findings of fact and conclusions of law shall specifically state the proposed patient's conduct which is a basis for determining that each of the requisites for commitment is met.

If commitment is ordered, the findings shall also include a listing of less restrictive alternatives considered and rejected by the court and the reasons for rejecting each alternative.

The function of the appellate court is not to reweigh the evidence, but rather to determine if the evidence as a whole sustains the trial court's findings. Only if the trial court's findings are clearly erroneous, may they be overturned. *In re Moll*, 347 N.W. 2d 67, 69 (Minn.Ct.App.1984).

The trial court found that Salkin "is ill with schizo-affective disorder, with a substantial psychiatric disorder of thought, mood and perception." The trial court also found that Salkin's disorder "grossly impairs judgment, behavior, the capacity to recognize reality, and the ability to understand"; and that Salkin lacks insight into his thought disorder and into the negative effect that his marijuana use has on his condition. The court specifically listed and rejected several less restrictive alternatives. These findings are supported by expert testimony presented at the hearing.

While the trial court did not expressly find that Salkin's disorder is "manifested by grossly disturbed behavior or faulty perceptions," the court did find that the disorder grossly impairs Salkin's behavior and capacity to recognize reality. Evidence of Salkin's grossly disturbed behavior or faulty perceptions was presented at the hearing.

The trial court found:

Respondent poses a substantial likelihood of causing physical harm as demonstrated by his assaultive behavior toward his brother and his family's housekeeper which led to his hospitalization.

Again, this finding is supported by the testimony offered at the hearing. In addition, the individual who observed Salkin on his balcony was concerned for Salkin's safety, and the officer who came to the Salkin residence after Salkin assaulted his brother testified that he was concerned for his own safety and the safety of the other people there.

█ Minn.Stat. § 253B.02, subd. 13 excludes brief periods of intoxication or dependence upon or addiction to drugs or alcohol when a determination is made that commitment is necessary. It is undisputed that Salkin has a problem with chemical abuse; however, the testimony indicated that Salkin is both chemically dependent and mentally ill.

## DECISION

Salkin has properly appealed from the trial court's order of commitment. The evidence and findings are sufficient to support Salkin's commitment as a mentally ill person.

AFFIRMED.