In re the ESTATE OF David
W. RIGGLE.

No. C0–02–606.

Court of Appeals of Minnesota.

Dec. 24, 2002.

Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, Minneapolis, MN, Leslie A. Anderson, Brooklyn Center, MN, for appellant.

Dennis W. Schurman, Detroit Lakes, MN, for respondent.

Considered and decided by MINGE, Presiding Judge, WILLIS, Judge, and WRIGHT, Judge.

## OPINION

MINGE, Judge.

The respondent filed a petition in an intestate probate proceeding claiming the homestead plus her elective share in decedent's augmented estate. The appellant objected claiming that decedent had abandoned the homestead occupied by respondent and that the residence was part of the augmented estate. In addition, the appellant argued that even if the parcel of real estate on which the residence was located was decedent's homestead, a second adjacent parcel was not included in the homestead and was part of the augmented estate. The district court determined that decedent's homestead included both parcels. This appeal was filed pursuant to Minn.Stat. § 525.71, subd. 6 (2002) and Minn.Stat. § 525.712 (2002). We affirm.

## FACTS

Decedent David Riggle died intestate in February 2001 as a result of injuries suffered in a one-vehicle accident. His widow, Rita J. Riggle, and their two minor children survive him. Decedent's widow is the respondent in this case. Appellant, Vivian Holmer, is decedent's mother who is the named beneficiary of a $200,000 life insurance policy that decedent owned at the time of his death.

Decedent and respondent, as joint tenants, bought a 20-acre parcel of land in rural Princeton, Minnesota. They built and lived in a home on this parcel (improved parcel). Approximately three months after purchasing the improved parcel, decedent bought the adjoining 25 acres in his own name (vacant parcel). The western and southerly boundaries of the improved parcel border the vacant parcel. Respondent testified that she and decedent hunted on the vacant parcel, that they cut their Christmas trees from the vacant parcel, and that she believed that part of the driveway for the residence was located on the vacant parcel.

In 1999, decedent and respondent separated and decedent moved out of the family home. In February 2000, respondent commenced marriage dissolution proceedings. After moving out of the family home, decedent initially lived in Dakota County; in the summer of 2000, decedent rented a house in Cambridge, Minnesota with a lease that ran until the spring of 2001. In December 2000, decedent and respondent placed their dissolution on inactive status and began a reconciliation. However, decedent continued to use the Cambridge house. He spent several nights per week there, kept most of his personal effects there, used that home as an office, received most of his mail there, and had a female friend who apparently spent several nights a week there. At the same time, decedent spent two to three nights per week with respondent at the rural Princeton home. Decedent claimed the Princeton home as his homestead for purposes of real estate taxes, kept a few items of personal property and personal effects at the rural Princeton home, did not change his voter registration or driver's license to a site other than the Prince-

ton home, and received a limited amount of mail at the Princeton address.

Decedent's true intentions are unclear. Respondent ·testified that decedent was telling her and their children that he intended to reside at the Princeton home and that they would be a family again. In an affidavit submitted to the district court, the owner of the Cambridge property stated that decedent had told him he wished to purchase the Cambridge house. A hunting friend of the decedent provided an affidavit stating that decedent had told him that he planned to divorce his wife and purchase the Cambridge property. Respondent claimed that she did not learn until after decedent's death that he was less than honorable in his relationship and dealings with her during what she believed was a reconciliation. She was somewhat bitter about his double life and indicated that she would not have agreed to decedent spending nights with her and their children if she knew he was not sincere about the reconciliation.

At the time of his death, decedent had entered into a purchase agreement to sell the vacant parcel adjacent to the homestead. Although a signature purporting to be respondent's appears on the purchase agreement, respondent claims that she was unaware of the planned sale and that her signature was forged. A handwriting expert opined the signature belonged to respondent. After decedent's death, this purchase agreement lapsed.

The significant assets in decedent's estate are his interests in the vacant and improved parcels of land in the Princeton area, various personal effects, and the $200,000 life insurance policy. The question before the district court was whether the Princeton land was decedent's homestead. If it was decedent's homestead, it would pass to respondent separate from the rest of decedent's estate. If the land

was not decedent's homestead, the Princeton land would become part of the augmented estate. The district court found that decedent had not abandoned the Princeton homestead and that the homestead included the unimproved parcel.

## ISSUES

1. Was the determination of the district court that decedent did not abandon his Princeton homestead an abuse of discretion?
2. Was the vacant parcel adjacent to the residence part of the homestead?
3. Can respondent supplement the record with extra documents?

## ANALYSIS

Homestead property is excluded from the augmented estate and descends free from testamentary or other disposition. Minn.Stat. §§ 524.2–204, .2–402 (2002). The district court's determinations that the decedent did not abandon the homestead and that both parcels constituted the homestead were legal conclusions based upon the district court's findings of fact. Appellant challenges both the district court's findings and the district court's resulting conclusions of the law.

### I.

■ The first issue is whether the decedent abandoned his Princeton homestead so that its value should be included in computing the augmented estate. If he did abandon his homestead, respondent as the widow will receive this property as a part of the augmented estate under the formula that provides for the election of the surviving spouse. If the decedent did not abandon the Princeton home, respondent as the widow will receive the homestead outright, and in addition, she will receive that portion of the augmented es-

tate to which she is entitled. The augmented estate will include the insurance policy of which appellant is the named beneficiary. Thus, the finding of whether the homestead was abandoned will affect the total property interest to which respondent as the widow succeeds in this probate proceeding.

 The determination of whether a homestead has been abandoned is a mixed question of law and fact. When reviewing mixed questions of law and fact, this court corrects erroneous applications of the law, but accords the district court discretion in its findings of fact and ultimate conclusions. *Rehn v. Fischley,* 557 N.W.2d 328, 333–34 (Minn.1997); *Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn.1990). This court does not reweigh the evidence presented to a district court. *Matter of Salkin,* 430 N.W.2d 13, 16 (Minn.App.1988) (finding the function of the appellate court is to determine if the evidence as a whole sustains the trial court's findings), *review denied* (Minn. Nov. 23, 1988).

 Probate law uses the term homestead prominently. It is especially important in determining the rights of the surviving spouse and children. However, the probate code does not define the term homestead or what constitutes abandonment of the homestead. Instead, Minnesota courts have looked to the legal principles in the debtor-creditor area for guidance. *See, e.g., Cleys v. Cleys,* 363 N.W.2d 65, 70 (Minn.App.1985) (applying homestead definition from Minn.Stat. § 510.01 in a probate proceeding despite objection that it should not be so applied because of its "debtor protection view"). The definition of the homestead from the Homestead Exemptions Chapter of the Minnesota Statutes is as follows:

The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated * * * shall constitute the homestead of such debtor and the debtor's family.

Minn.Stat. § 510.01 (2002). The surviving spouse and children have an emotional attachment to their home and a strong economic interest in either its continued occupancy or its availability as an asset. *See Tomlinson v. Kandiyohi County Bank,* 162 Minn. 230, 234, 202 N.W. 494, 495 (1925) (noting the homestead exemption "is not alone for the husband and his protection but for the benefit of the wife and the children as well"). Neither the decedent, nor creditors, nor other claimants should be able to defeat these interests or expectations unless the laws and principles governing the protection of the homestead are met. *Denzer v. Prendergast,* 267 Minn. 212, 216, 126 N.W.2d 440, 443 (1964); *Jensen v. Christensen,* 216 Minn. 92, 95, 11 N.W.2d 798, 799 (1943); *Tomlinson,* 162 Minn. at 230, 202 N.W. at 494; *cf. Rux v. Adam,* 143 Minn. 35, 172 N.W. 912 (1919). Courts are to liberally construe homestead laws. *Denzer,* 267 Minn. at 216, 126 N.W.2d at 444; *Jensen,* 216 Minn. at 95, 11 N.W.2d at 799.

 The question of abandonment of homestead in the context of probate is one of first impression for this court. In the debtor-creditor context Minnesota law provides:

If the owner dies leaving a spouse or minor children constituting the owner's family surviving, the homestead exemption shall not be affected by the death. If the owner shall abscond, or otherwise desert the family, the spouse and the minor children comprising the family may retain the homestead, with all the rights of the owners therein.

Minn.Stat. § 510.06 (2002).

 Case law indicates that abandonment of a homestead has two basic compo-

nents: cessation of occupancy and lack of an intent to return. In *Vickery v. First Bank of LaCrosse*, 368 N.W.2d 758 (Minn. App.1985), *review denied* (Minn. Aug. 20, 1985), this court stated: "Once a homestead right is established, the burden of proof shifts to the creditor to establish abandonment thereof by clear and convincing evidence." *Id.* at 763. In *Vickery*, the court went on to determine that absence from the homestead for a period of one year with little apparent intent to return was not adequate to meet the clear and convincing evidence requirement for abandonment. *Id.* at 764. It was important to the court that the wife apparently had a stronger attachment than the husband to the residence at issue. *Id.* That the husband had not established another domicile was also a factor in the court's analysis. *Id.* at 765; *cf. Donaldson v. Lamprey*, 29 Minn. 18, 11 N.W. 119 (1881) (finding owner could not continue to claim property as homestead when he had acquired a new residence and homestead in another county). Other decisions echo this strong support for the homestead protection. *See, e.g., In re Estate of Van Den Boom*, 590 N.W.2d 350, 353 (Minn.App.1999) (noting, in interpreting probate code provision, "The homestead exemption has long been recognized as important in providing a sanctuary for a debtor's home, notwithstanding the just demands of creditors." (quotation omitted)), *review denied* (Minn. May 26, 1999); *Gordon v. Emerson–Brantingham Implement Co.*, 168 Minn. 336, 339, 210 N.W. 87, 88 (1926). In one opinion the supreme court stated:

> Abandonment of a homestead results when the owner removes therefrom and ceases to occupy the same, with the intention of never returning or with no intention of returning thereto to reside.

*In re Hickman*, 222 Minn. 161, 168, 23 N.W.2d 593, 597 (1946) (quotation omitted). Prior to *Hickman*, the Minnesota Supreme Court determined that an intention to move from the homestead is not enough to constitute abandonment; there must also be "an actual removal from the premises." *Millett v. Pearson*, 143 Minn. 187, 189, 173 N.W. 411, 412 (1919).

Indeed, courts have given a surviving spouse an election as to whether she claims as a homestead the marital residence which the departing spouse has left or the new one which he has established. *See Rux*, 143 Minn. at 35, 172 N.W. at 912 (Indiana spouse traces husband to Renville County and then to Marshall County and successfully claims homestead in 80 acres of land owned by husband against the interests of new common law wife who had six children with decedent); *cf. St. Denis v. Mullen*, 157 Minn. 266, 196 N.W. 258 (1923).

Appellant places great weight on respondent's admission that the decedent may have been lying to her about reconciling and being a family again. However, respondent only spoke with candor about possibly being deceived. She did not know the decedent's true intent. Perhaps he would have abandoned the paramour if forced to choose.

■ To determine the decedent's intent, we look to decedent's conduct, not merely decedent's declarations. *Gordon*, 168 Minn. at 340, 210 N.W. at 88 ("A man's intentions are not necessarily fixed by what he may declare them to be. They are determined by his conduct." (quotation omitted)). From the facts, it appears that decedent was of two minds. He continued to spend several nights per week at the family home and continued to keep certain items of personal property there. To grant appellant the outcome she seeks would require that we reverse the district court and that we reject the possibility that decedent would ultimately have

stayed with respondent. In light of the public policy of supporting the family unit and protecting the homestead for the benefit of the family, we are not prepared to overrule the district court and to reject that possibility. There is no showing that decedent left the Princeton home with no intent to ever return. We conclude that the district court did not abuse its discretion; decedent's actions were not clear and convincing evidence of an abandonment of the homestead. We affirm the district court's ruling that the Princeton property was decedent's homestead.

## II.

■ The second issue is whether the vacant parcel is part of the homestead and is, therefore, exempt from the augmented estate. Appellant argues that the vacant parcel should not be considered part of the homestead because it was purchased separately, was titled in the decedent's name alone, is unimproved, was not essential to the use and enjoyment of the improved parcel, and was in the process of being sold at the time of his death. Respondent argues that the vacant parcel is homestead property because it adjoins the improved parcel on two sides, was used by the family occasionally, was often the source of the family's Christmas trees, and contained part of the driveway to the family home.

■ In this part of the instant case, we consider the district court's application of the law to undisputed facts. In this setting, a reviewing court need not defer to the district court's application of the law to material facts which are not in dispute. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

■ In undeveloped areas, the homestead may be up to 160 acres. Minn. Stat. § 510.02 (2002). Minnesota law is clear that the homestead is not limited to the dwelling and the immediately sur-

rounding land but extends to farmland and business-use property. *O'Brien v. Johnson*, 275 Minn. 305, 310, 148 N.W.2d 357, 361 (1967); *Stauning v. Crookston Mercantile Co.*, 134 Minn. 478, 478, 159 N.W. 788, 788 (1916). A person's homestead may include more than one parcel. The test to determine whether the additional parcels are part of the homestead is set forth in *Brixius v. Reimringer*, 101 Minn. 347, 112 N.W. 273 (1907). In *Brixius*, the Minnesota Supreme Court held that two parcels, touching only at the corners, could be treated as one parcel for homestead purposes. *Brixius*, 101 Minn. at 348–49, 112 N.W. at 273–74. The *Brixius* court noted:

> The essential thing to constitute a quantity of land within the homestead law is that it shall be occupied and cultivated as one piece or parcel of land, on some part of which is located the residence. This object is accomplished when two parcels touch at the corners, provided the essential conditions to constitute a homestead exist.

*Id.* We note that the *Brixius* test does not preclude homestead treatment for both parcels simply because one parcel was owned in joint tenancy and one parcel was not. The test from *Brixius* focused on occupation and cultivation, not on the form of ownership.

■ Mixed use does not preclude homestead treatment for the parcels. *See, e.g., Wilson v. First Nat'l Bank*, 239 Minn. 550, 552, 60 N.W.2d 69, 70 (1953) (finding an owner who lives in a building may exempt the entire building even if he leases portions of the premises to others). Farmers may allocate portions of their homestead property for their home and portions of their property for farming. In the case of *Rux v. Adam*, the decedent owned 120 acres at a time when Minnesota

law allowed for an 80 acre homestead. 143 Minn. 35, 172 N.W. 912 (1919). The court without difficulty and without controversy among the parties recognized that the fields were homestead property for purposes of the spousal election even though the buildings were only in one area of the larger homestead. *Rux*, 143 Minn. at 38–39, 172 N.W. at 913–14.

The parcels in this case are even more connected than the parcels in the *Brixius* case. While the parcels in the *Brixius* case touched only at the corners, the parcels in this case share two borders. Respondent testified that she and decedent treated the two parcels as one parcel. There is no business use. A portion of the property was allocated for the home, and a portion of the property was allocated for recreational or leisure use. We conclude the vacant parcel and the improved parcel constitute the homestead of decedent and we affirm the district court's determination in this respect.

### III.

█ Appellant brought a motion to strike four documents, including a letter, agriculture receipts, and tax returns from the appendix of respondent's brief because the documents were not submitted to the trial court, and as such are outside the record on appeal. Minn. R. Civ.App. P. 110.01. Respondent concedes the documents at issue were not submitted to the trial court but argues that they should be considered because they are conclusive and can be used to support the district court's decision. Appellant argues that the court should strike the documents because they are not conclusive on the issue of whether the property in question was decedent's homestead and they are not self-authenticating.

█ Generally, the court strikes documents in a party's brief that are not part of the appellate record. *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn.App. 1992), *aff'd*, 504 N.W.2d 758 (Minn.1993). But, " '[A]ppellate courts, in order to sustain verdicts and judgments, will permit omissions to be supplied by documentary evidence of a conclusive nature.' " *Chahla v. City of St. Paul*, 507 N.W.2d 29, 33 (Minn.App.1993) (quoting *Mattfeld v. Nester*, 226 Minn. 106, 123, 32 N.W.2d 291, 303–04 (1948)), *review denied* (Minn. Dec. 14, 1993).

Appellant is correct that the documents at issue do not fit within the *Mattfeld* exception. In *Mattfeld*, the court commented:

> Courts, both trial and appellate, in order to prevent the miscarriage of justice resulting from a retrial, for the purpose of proving a fact the existence of which can be conclusively established by an indisputable and incontrovertible document, have the power to reopen the case to receive such proof even after verdict, and will exercise the power to sustain a verdict or judgment where the omission was caused through inadvertence or mistake of counsel for the prevailing party in failing to offer the proof upon the trial.

226 Minn. at 122, 32 N.W.2d at 303. Although the documents in this case are offered in support of the district court's decision, they largely duplicate respondent's testimony at the evidentiary hearing. Since the documents are not necessary to establish that the property at issue was decedent's homestead, and since we generally decline to allow the record to be supplemented on appeal, we strike the documents.

### DECISION

The district court correctly determined that the decedent did not abandon the Princeton home that he occupied with re-

spondent and their children and that the Princeton homestead consisted of both the improved and unimproved parcels. We strike from the record on appeal those documents offered by the respondent that were not in the record before the district court.

**Affirmed; motion granted.**